No. 26-1449

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

NATIONAL ASSOCIATION OF HOME BUILDERS OF THE UNITED STATES, *et al.*,
PLAINTIFFS-APPELLANTS,

v.

MONTGOMERY COUNTY, MARYLAND,
DEFENDANT-APPELLEE.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**BRIEF FOR THE DISTRICT OF COLUMBIA, COLORADO, CONNECTICUT, HAWAII, ILLINOIS, MARYLAND, MASSACHUSETTS, MICHIGAN, MINNESOTA, NEW JERSEY, NEW MEXICO, NEW YORK, OREGON, VERMONT, AND THE CITY OF NEW YORK AS AMICI CURIAE IN SUPPORT OF DEFENDANT-APPELLEE AND AFFIRMANCE**

BRIAN L. SCHWALB
Attorney General for the District of Columbia

CAROLINE S. VAN ZILE
Solicitor General

ASHWIN P. PHATAK
Principal Deputy Solicitor General

ADAM J. TUETKEN
BRYAN J. LEITCH
ROMINA LILOLLARI
Assistant Attorneys General
Office of the Solicitor General

Office of the Attorney General
400 6th Street, NW, Suite 8100
Washington, D.C. 20001
(202) 724-6609
caroline.vanzile@dc.gov

# TABLE OF CONTENTS

INTRODUCTION AND INTEREST OF AMICI...................................................1

BACKGROUND ...............................................................................................2

SUMMARY OF ARGUMENT ..........................................................................4

ARGUMENT .....................................................................................................5

    I.     EPCA Has Long Been Understood To Preempt Only A Narrow Range Of State And Local Laws...........................................................5

          A.     The federal government, states, and localities have collectively understood that EPCA preempts only laws that target products' energy performance ...................................6

          B.     EPCA and related federal laws support a variety of state energy policies, including policies like the County's.................8

    II.    Plaintiffs' Interpretation Is Wrong And Would Upset The Settled Understanding Of EPCA Preemption ...................................................12

    III.   Upsetting The Understanding Of EPCA Would Have Severe Consequences For States And Localities ...........................................22

          A.     Plaintiffs' interpretation would threaten to preempt a startling swath of laws ...........................................................22

          B.     Plaintiffs' interpretation lacks clear, administrable rules that states and localities need..................................................27

CONCLUSION ................................................................................................28

# TABLE OF AUTHORITIES

*Cases*

*Ala. Ass'n of Realtors v. HHS*,
    594 U.S. 758 (2021)...................................................................................21

*Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*,
    576 U.S. 787 (2015)...................................................................................20

*Ass'n of Contracting Plumbers of the City of N.Y., Inc. v. City of N.Y.*,
    --- F.4th ---, Nos. 25-977 & 25-2041, 2026 WL 1871692 (2d Cir. June
    30, 2026) .................................................................... 6, 12, 13, 14, 22

*Bates v. Dow Agrosciences LLC*,
    544 U.S. 431 (2005)...................................................................................19

*Biden v. Nebraska*,
    600 U.S. 477 (2023) ............................................................................ 21, 22

*Bond v. United States*,
    572 U.S. 844 (2014)...................................................................................26

*Cable Television Ass'n of N.Y. v. Finneran*,
    954 F.2d 91 (2d Cir. 1992) ........................................................................16

*California v. FERC*,
    495 U.S. 490 (1990).....................................................................................8

*Cochran v. Holder*,
    564 F.3d 318 (4th Cir. 2009) .....................................................................12

*Consumer Data Indus. Ass'n v. Frey*,
    26 F.4th 1 (1st Cir. 2022)...........................................................................16

*CTS Corp. v. Waldburger*,
    573 U.S. 1 (2014).......................................................................................11

*Dan's City Used Cars, Inc. v. Pelkey*,
    569 U.S. 251 (2013)...................................................................................26

*Dominion Energy, Inc. v. City of Warren Police & Fire Ret. Sys.*,
 928 F.3d 325 (4th Cir. 2019) ....................................................................17

*Dubin v. United States*,
 599 U.S. 110 (2023)..................................................................................15

*GenBioPro, Inc. v. Raynes*,
 144 F.4th 258 (4th Cir. 2025) ..................................................... 8, 20, 22

*Gobeille v. Liberty Mut. Ins. Co.*,
 577 U.S. 312 (2016)..................................................................................27

*Gregory v. Ashcroft*,
 501 U.S. 452 (1991)....................................................................................1

*Haig v. Agee*,
 453 U.S. 280 (1981)....................................................................................7

*Huron Portland Cement Co. v. City of Detroit*,
 362 U.S. 440 (1960)....................................................................................1

*In re Pittsburgh & Lake Erie Props., Inc.*,
 290 F.3d 516 (3d Cir. 2002) .....................................................................17

*In re Rail Freight Fuel Surcharge Antitrust Litig.*,
 34 F.4th 1 (D.C. Cir. 2022)............................................................... 15, 17

*Kansas v. Garcia*,
 589 U.S. 191 (2020)..................................................................................22

*La. Pub. Serv. Comm'n v. FCC*,
 476 U.S. 355 (1986)..................................................................................22

*Lorillard Tobacco Co. v. Reilly*,
 533 U.S. 525 (2001)..................................................................................26

*Medtronic, Inc. v. Lohr*,
 518 U.S. 470 (1996)....................................................................................1

*Melillo v. Brais*,
 No. 3:17-cv-520, 2019 WL 1118091 (D. Conn. Mar. 11, 2019).......................25

*Mellouli v. Lynch*,
575 U.S. 798 (2015)......................................................................... 13, 17

*Monsalvo v. Bondi*,
604 U.S. 712 (2025)...........................................................................7, 8

*N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*,
514 U.S. 645 (1995)....................................................................... 11, 17

*N.Y. State Dep't of Soc. Servs. v. Dublino*,
413 U.S. 405 (1973).............................................................................11

*Oneok, Inc. v. Learjet, Inc.*,
575 U.S. 373 (2015).............................................................................1

*Pennell v. City of San Jose*,
485 U.S. 1 (1988).................................................................................1

*Sinclair Wyo. Refin. Co. v. EPA*,
114 F.4th 693 (D.C. Cir. 2024)..........................................................16

*United States v. Halseth*,
342 U.S. 277 (1952)............................................................................16

*United States v. Miller*,
604 U.S. 518 (2025)............................................................................12

*Wash. Gas Light Co. v. Prince George's Cnty. Council*,
711 F.3d 412 (4th Cir. 2013) .............................................................24

*Wyeth v. Levine*,
555 U.S. 555 (2009)....................................................................... 14, 18

*Statutes and Regulations*

10 C.F.R. § 430.2 ......................................................................... 23, 24

10 C.F.R. § 430.32 ....................................................................... 21, 23

25 Colo. Code Regs. § 1001-32 ........................................................26

42 U.S.C. § 6201 ...................................................................................1

42 U.S.C. § 6291 ............................................................... 3, 4, 12, 13

42 U.S.C. § 6292 ...........................................................................23

42 U.S.C. § 6293 ................................................................. 3, 13, 15

42 U.S.C. § 6295 ...............................................................................2

42 U.S.C. § 6297 ...............................................................................3

42 U.S.C. § 6311 ...............................................................................2

42 U.S.C. § 6321 ..........................................................................9, 11

42 U.S.C. § 6322 ..........................................................................9, 11

42 U.S.C. § 6323 ..................................................................... 9, 10, 11

42 U.S.C. § 6324 ..........................................................................9, 11

42 U.S.C. § 6325 ..........................................................................9, 11

42 U.S.C. § 6326 .............................................................................11

42 U.S.C. § 6371 .............................................................................10

42 U.S.C. § 6371k ...........................................................................10

42 U.S.C. § 6372 .............................................................................10

42 U.S.C. § 6372i ............................................................................10

42 U.S.C. § 6831 .............................................................................10

42 U.S.C. § 6833 .............................................................................10

42 U.S.C. § 6834 ...................................................................... 18, 19

42 U.S.C. § 6836 .............................................................................10

42 U.S.C. § 6838 .............................................................................10

425 Ill. Comp. Stat. Ann. § 65/8 ....................................................................23

425 Ill. Comp. Stat. Ann. § 65/9 ....................................................................23

49 U.S.C. § 32919 ..........................................................................................16

Cal. Health & Safety Code § 19881 ...............................................................23

Energy Conservation Standards for New Buildings Act, Pub. L. No. 94-385, 90 Stat. 1125 (1976)..................................................................................10

Energy Policy and Conservation Act, Pub. L. No. 94-163, 89 Stat. 871 (1975)............................................................................................................9

Inflation Reduction Act, Pub. L. No. 117-169, 136 Stat. 1818 (2022) ...................11

L.A. Mun. Code § 57.605.10.2 .......................................................................24

Minn. Stat. § 116.92........................................................................................24

N.Y. Real Prop. Law § 239-e..........................................................................23

N.Y.C. Admin. Code § 28-506.1 .....................................................................19

National Appliance Energy Conservation Act, Pub. L. No. 100-12, 101 Stat. 103 (1987)..............................................................................................7

National Energy Conservation and Policy Act, Pub. L. No. 95-619, 92 Stat. 3206 (1978)..............................................................................................9

Ohio Admin. Code § 3341-2-15 ......................................................................24

R.I. Gen. Laws § 23-24.9-2.............................................................................24

R.I. Gen. Laws § 23-24.9-6.1..........................................................................24

*Legslative History*

Clean Energy DC Building Code Amendment Act of 2022, D.C. Council, Report on Bill 24-420 (June 13, 2022) ...............................................26

H.R. Rep. No. 100-11 (1987)....................................................................7, 19

S. Rep. No. 100-6 (1987) ..............................................................................7

*Other Authorities*

47 Fed. Reg. 14424 (Apr. 2, 1982) ...........................................................6

47 Fed. Reg. 57198 (Dec. 22, 1982) .........................................................6

71 Fed. Reg. 12634 (Mar. 13, 2006) .........................................................8

75 Fed. Reg. 59470 (Sept. 27, 2010) ...................................................7, 18

85 Fed. Reg. 30878 (May 21, 2020) .........................................................8

89 Fed. Reg. 28856 (Apr. 19, 2024) .........................................................7

Br. for the U.S. & FTC, *In re Rail Freight Fuel Surcharge Antitrust Litig.*,
　　Nos. 21-7093, 21-7095 (D.C. Cir. Dec. 22, 2021), 2021 WL 6091019 ............16

Br. for the U.S. in Supp. of Pet. for Reh'g, *Cal. Rest. Ass'n v. City of
　　Berkeley*, No. 21-16278 (9th Cir. June 12, 2023), ECF No. 94 .............. 8, 19, 21

Br. for the U.S., *Cal. Rest. Ass'n v. City of Berkeley*, No. 21-16278 (9th Cir.
　　Feb. 2, 2022), ECF No. 33, 2022 WL 433159 ......................................8

Def.'s Mem. of L. in Supp. of Mot. to Dismiss, *Hess v. Samsung Elecs. Am.,
　　Inc.*, 3:23-cv-50106 (N.D. Ill. June 5, 2023), ECF No. 19 ................................25

DOE, *Small Space Heaters* .........................................................................23

FDNY Found., *Don't Use Kerosene or Propane Space Heaters* ...........................23

David Iaconangelo, *Washington State Hits the Brakes on Landmark Gas
　　Ban*, E&E News (May 25, 2023).......................................................28

Mem. of P. & A. in Supp. of Def.'s Mot. to Dismiss, *Sherzai v. LG Elecs.
　　USA, Inc.*, No. 2:23-cv-429 (E.D. Cal. May 12, 2023), ECF No. 14-1..............25

David Santana Ortiz & Mark Allen Bernstein, RAND, MR-1105.0-DOE,
　　*Measures of Residential Energy Consumption and Their Relationships to
　　DOE Policy* (1999) ......................................................................10

Gov. Jared Polis, *Colorado Greenhouse Pollution Reduction Roadmap 2.0* (Feb. 2024) ....................................................................................................26

Brady Seals & Leah Louis-Prescott, *Uncovering the Deadly Toll of Air Pollution From Buildings*, RMI (May 5, 2021) ...................................................25

Susannah Shoemaker, *NREL Researchers Reveal How Buildings Across United States Do—and Could—Use Energy*, Nat'l Lab'y of the Rockies (Sept. 14, 2023) ....................................................................................................25

*The American Heritage College Dictionary* (3d ed. 1993) ....................................15

*The Random House Dictionary of the English Language* (2d ed. 1987) ................15

U.S.'s Statement of Interest, *Nat'l Ass'n of Home Builders v. Montgomery County*, No. 24-cv-3024 (D. Md. Jan. 17, 2025), ECF No. 30.... 8, 11, 16, 18, 21

Vt. Dep't of Envtl. Conserv., *10 VSA §7152(a) Sale of Mercury-Containing Lamps Final Determination Notice* ....................................................................24

*Webster's Ninth New Collegiate Dictionary* (1985) ..............................................15

*Zero*, Merriam-Webster Dictionary .......................................................................13

## INTRODUCTION AND INTEREST OF AMICI

The District of Columbia and Colorado, Connecticut, Hawaii, Illinois, Maryland, Massachusetts, Michigan, Minnesota, New Jersey, New Mexico, New York, Oregon, Vermont, and the City of New York (Amici) file this brief as amici curiae in support of Defendant-Appellee Montgomery County ("the County") and affirmance, pursuant to Federal Rule of Appellate Procedure 29(a)(2).

Our federalist system leaves most policymaking powers to states and localities, as they are closest to the people. *Gregory v. Ashcroft*, 501 U.S. 452, 457-58 (1991). That includes the powers to protect the health and safety of their residents, *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996), enact building codes, *Pennell v. City of San Jose*, 485 U.S. 1, 12 (1988), minimize air pollution, *Huron Portland Cement Co. v. City of Detroit*, 362 U.S. 440, 442 (1960), and regulate gas distribution, *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 378 (2015). Pursuant to these powers, Amici have enacted building energy codes, fostered reliance on renewable energy, and restricted unsafe products. All the while, Amici have complied with federal law, which has supported—not stymied—those efforts.

Plaintiffs' theories would needlessly curtail these traditional powers without a clear congressional mandate. Plaintiffs allege that the Energy Policy and Conservation Act (EPCA), 42 U.S.C. § 6201 *et seq.*, preempts Section 8-14D of the Montgomery County Code, which requires the County Executive to promulgate

regulations prohibiting fossil-fuel-combusting equipment in new construction of certain buildings. EPCA, however, sets performance standards that appliance manufacturers must meet when designing certain products. Through a narrow preemption provision, EPCA prevents states or localities from imposing their own performance standards on manufacturers. The County's law sets no such standards, whether directly or indirectly. So the law is not preempted, as the district court correctly held.

To argue otherwise, Plaintiffs stretch EPCA far beyond its text and purpose. They not only invent a federal right to use gas appliances, but they further reimagine EPCA to leave states with vanishingly little power to enact laws to conserve energy. Plaintiffs' interpretation contradicts the entrenched understanding of EPCA and would upend settled expectations—with severe consequences for states and localities. This Court should reject that theory and affirm.

## BACKGROUND

EPCA preemption is straightforward. As relevant here, the statute or the Department of Energy (DOE) establishes "energy conservation standards" for products covered by EPCA. 42 U.S.C. § 6295(a).[1] An "energy conservation standard" is "a performance standard which prescribes . . . a maximum quantity of

---

[1] EPCA applies similar, and often identical, policies to industrial equipment. *See, e.g.*, 42 U.S.C. § 6311. This brief will refer to EPCA's consumer provisions, but the same interpretations apply to the corresponding industrial provisions.

2

energy use . . . for a covered product, determined in accordance with test procedures prescribed under section 6293." *Id.* § 6291(6)(A). "[E]nergy use" means "the quantity of energy directly consumed by a consumer product at point of use, determined in accordance with test procedures under section 6293." *Id.* § 6291(4). And Section 6293's test procedures measure the "energy use" of "a covered product during a representative average use cycle or period of use." *Id.* § 6293(b)(3). EPCA thus defines "energy use" as a fixed, premarket, representative measure of how much energy a product typically consumes, measured under controlled test conditions— not how much energy a product actually consumes when a consumer operates it. *See id.* § 6297(g) (recognizing distinction between "energy use" and the consumption of energy "under conditions of actual use").

EPCA then provides a "[g]eneral rule of preemption for energy conservation standards when [a] Federal standard becomes effective for [a] product." *Id.* § 6297(c). That rule states in relevant part: "on the effective date of an energy conservation standard . . . , no State regulation concerning the . . . energy use . . . of such covered product shall be effective with respect to such product." *Id.* Applying EPCA's definition of "energy use," a "regulation concern[s]" the "energy use" of a "covered product" when it concerns the typical quantity of energy a product is designed to consume under carefully prescribed testing conditions. *Id.* §§ 6293(b)(3), 6297(c). The prime example would be a state energy conservation

standard establishing a product's "maximum quantity of energy use" as "determined in accordance with [DOE] test procedures." *Id.* § 6291(6)(A). The statute otherwise does not preempt state and local regulations unless they concern the "energy use" of a covered product as defined by EPCA.

Accordingly, the district court held that the County's law is not preempted. JA12. That law, once implemented, will require certain buildings to be "all-electric" and, as such, contain no equipment that combusts "fuel gas or fuel oil." JA3 (internal quotation marks omitted). The district court explained that the law is not preempted because it "simply does not regulate 'energy use' as the term is understood in the EPCA." JA13. The law instead prohibits appliances regardless of their "energy use." JA12.

## SUMMARY OF ARGUMENT

1. Based on repeated guidance from DOE, states and localities have long understood EPCA to preempt laws that regulate the energy performance of EPCA-covered products. Consistent with that understanding, federal energy laws encourage states and localities to adopt all manner-of-energy policies other than appliance performance standards, including building codes that—like the County's—transition buildings away from reliance on fossil fuels.

2. Plaintiffs' interpretation would overturn this understanding. If adopted, their interpretation would transform EPCA from a shield protecting product

4

manufacturers from conflicting performance standards into a sword for anyone to invalidate potentially any law affecting appliances' usage or availability. Until recently, no one has misunderstood EPCA that way. And although the United States now joins in Plaintiffs' misconstruction, the United States' interpretation contradicts EPCA's text, the United States' prior positions, and fundamental limits on federal agencies' power.

3. Plaintiffs' interpretation, taken to its limit, could also have severe consequences for states and localities. The laws that could be swallowed by Plaintiffs' sweeping preemption theory could run the gamut from college dorm rules to zoning plans. And Plaintiffs' interpretation leaves states and localities with no concrete standard for understanding what is and is not preempted, frustrating their ability to respond to the needs of their local constituencies in the way our federal system envisions.

## ARGUMENT

### I. EPCA Has Long Been Understood To Preempt Only A Narrow Range Of State And Local Laws.

For decades, states, localities, and the federal government shared a common—and narrow—understanding of EPCA preemption. That shared understanding is reflected in the myriad federal laws supporting state and local energy policies, all of which are incompatible with Plaintiffs' expansive view of EPCA preemption.

**A.** **The federal government, states, and localities have collectively understood that EPCA preempts only laws that target products' energy performance.**

EPCA's implementing agency (DOE) has frequently interpreted the statute to preempt only a narrow subset of state energy regulations. *See Ass'n of Contracting Plumbers of the City of N.Y., Inc. v. City of N.Y.*, --- F.4th ---, Nos. 25-977 & 25-2041, 2026 WL 1871692, at *12-13 (2d Cir. June 30, 2026) (recognizing that DOE has "continued to interpret the preemption provision" to cover "only 'energy conservation standards' and the like" (internal quotation marks omitted)). In 1982, DOE advised that "only State regulations that are appliance *efficiency* standards" or that "established the energy efficiency of a particular appliance" were preempted, not "regulations that have only a peripheral effect on the energy efficiency of a covered product." 47 Fed. Reg. 14424, 14456 (Apr. 2, 1982). DOE explained that EPCA would preempt, for example, a "[p]rohibition of hook-ups for appliances with less than a certain efficiency," i.e., less than a specific energy use figure. 47 Fed. Reg. 57198, 57215 (Dec. 22, 1982). But, in contrast, a prohibition on installing a covered product at all in new buildings would *not* be preempted. *See id.* ("Prohibition against placing oversized furnaces and air conditioners in new buildings, would not be subject to preemption."). The difference between the two is that the latter does not turn on whether a product has a particular "energy use" figure.

6

Congress acquiesced in DOE's view of EPCA preemption a few years later in the National Appliance Energy Conservation Act (NAECA), Pub. L. No. 100-12, 101 Stat. 103 (1987). While NAECA changed "the criteria" for DOE preemption *waivers*, H.R. Rep. No. 100-11, at 24 (1987), Congress did not disagree with DOE about what laws were preempted in the first place. To the contrary, NAECA "follow[ed] substantially the preemption requirements in current EPCA" by "continu[ing] the basic concept of preempting State energy efficiency standards," *id.* at 23-24, "as provided under current law," S. Rep. No. 100-6, at 9 (1987). Congress's deliberate choice to maintain the status quo in NAECA reinforces EPCA's narrow preemptive scope. *See Monsalvo v. Bondi*, 604 U.S. 712, 725 (2025) ("When Congress adopts a new law against the backdrop of a 'longstanding administrative construction,' this Court generally presumes the new provision should be understood to work in harmony with what has come before." (quoting *Haig v. Agee*, 453 U.S. 280, 297-98 (1981))).

DOE's own post-NAECA actions confirm as much. Since NAECA's enactment, DOE has continued across administrations to "interpret[] 'regulation concerning energy use' to be equivalent to 'energy conservation standard,'" and it has emphasized that the preemption provision's title "further clarifies that this section addresses energy conservation standards." 75 Fed. Reg. 59470, 59530 (Sept. 27, 2010); *see, e.g.*, 89 Fed. Reg. 28856, 28865 (Apr. 19, 2024); 85 Fed. Reg. 30878,

7

30879 (May 21, 2020); 71 Fed. Reg. 12634, 12635 (Mar. 13, 2006). In recent years, moreover, the United States reaffirmed this interpretation and represented that EPCA does not preempt laws that prohibit gas appliances—including the very law challenged here.[2] Had Congress intended NAECA to expand EPCA's preemptive scope, then surely DOE would have acknowledged that expansion in the nearly four decades since NAECA was enacted. *See Monsalvo*, 604 U.S. at 725-27 (concluding that Congress acquiesced in longstanding administrative construction based in part on post-enactment governmental conduct).

**B.** **EPCA and related federal laws support a variety of state energy policies, including policies like the County's.**

Further refuting Plaintiffs' sweeping vision of EPCA is the fact that Congress has long supported state energy policies and building codes similar to the County's. *See California v. FERC*, 495 U.S. 490, 497 (1990) (courts "must . . . give full effect to evidence that Congress considered, and sought to preserve, the States' coordinate regulatory role in our federal scheme"); *GenBioPro, Inc. v. Raynes*, 144 F.4th 258, 274-75 (4th Cir. 2025) (finding no preemption when Congress preserved a role for

---

[2] U.S.'s Statement of Interest 4-6, *Nat'l Ass'n of Home Builders v. Montgomery County*, No. 24-cv-3024 (D. Md. Jan. 17, 2025), ECF No. 30 ("U.S. *Montgomery* Br."), *withdrawn*, ECF No. 39 (D. Md. March 19, 2025); Br. for the U.S. 8-9, 19-21, *Cal. Rest. Ass'n v. City of Berkeley*, No. 21-16278 (9th Cir. Feb. 2, 2022), ECF No. 33, 2022 WL 433159 ("U.S. *Berkeley* Br."); Br. for the U.S. in Supp. of Pet. for Reh'g 7-13, *Berkeley*, No. 21-16278 (9th Cir. June 12, 2023), ECF No. 94 ("U.S. *Berkeley* Reh'g Br.").

state regulation, even in an area of extensive federal regulation).  In EPCA itself, for example, Congress declared its support for "the development and implementation by States of laws, policies, programs, and procedures to conserve and to improve efficiency in the use of energy."  Pub. L. No. 94-163, § 361(a)(1), 89 Stat. 871, 932 (1975).  Likewise, Congress commanded that "all sectors of our Nation's economy must begin immediately to significantly reduce the demand for nonrenewable energy resources such as oil and natural gas."  National Energy Conservation and Policy Act, Pub. L. No. 95-619, § 102(a)(3), 92 Stat. 3206, 3209 (1978) (amending EPCA).

To that end, EPCA supports states and localities by:

- providing financial and technical support to create energy conservation plans, which are comprehensive policy plans to reduce energy consumption and improve energy efficiency, 42 U.S.C. §§ 6321-6325, and may include "programs to promote energy efficiency in residential housing" and "programs for the development of building retrofit standards and regulations," *id.* § 6322(d)(8), (14);

- funding "renewable-resource energy measure[s]," *id.* § 6325(e), defined to include measures for pre-1976 buildings that "involve changing, in whole or in part, the fuel or source of the energy used to meet the requirements of such building or plant from a depletable source of energy to a nondepletable source of energy," *id.* § 6321(c)(7)(A);

9

- allocating funds "[i]f [DOE] determines that a State has demonstrated a commitment to improving the energy efficiency of buildings," *id.* § 6323(e);

- and providing financial and technical support for state and local plans to reduce fossil fuel dependency and energy consumption of public schools, public hospitals, buildings owned by local governments, and public care institutions, *id.* §§ 6371-6371k, 6372-6372i.

Congress's post-EPCA enactments reinforce the point. In 1976, for instance, Congress directed DOE to help states develop building codes with an eye toward "stimulation of use of nondepletable sources of energy." Energy Conservation Standards for New Buildings Act, Pub. L. No. 94-385, § 310, 90 Stat. 1125, 1149 (1976). Congress recognized that "State and local building codes . . . can provide an existing means by which to assure, . . . with a minimum of Federal interference in State and local transactions, that newly constructed buildings contain adequate energy conservation features." 42 U.S.C. § 6831(4). So Congress today provides financial and technical support for states to create and implement building codes that conserve energy. *Id.* §§ 6833, 6836, 6838. And so, EPCA has always coexisted with extensive state regulation of buildings' energy consumption. David Santana Ortiz & Mark Allen Bernstein, RAND, MR-1105.0-DOE, *Measures of Residential Energy Consumption and Their Relationships to DOE Policy* 29, 61 (1999), https://perma.cc/R8QD-549Y.

Recently in 2022, the Inflation Reduction Act (IRA) directed DOE to issue grants to states and localities—pursuant to its authority under EPCA—to adopt "building energy code[s]" that "meet[] or exceed[] the zero energy provisions in the 2021 International Energy Conservation Code [IECC]." Pub. L. No. 117-169, §§ 50131(a)(2), (c)(1), 136 Stat. 1818, 2042 (2022) (citing 42 U.S.C. §§ 6321-6326). According to DOE, "[a]pproaches to comply with the IECC requirements include all-electric buildings." U.S. *Montgomery* Br. 9. Thus, pursuant to the IRA, DOE awarded the County a grant to pursue the law that Plaintiffs challenge here. *Id.*

This carefully reticulated, cooperative federalism regime repudiates Plaintiffs' sweeping view of EPCA preemption. When, as here, Congress "encourage[s]" state policies by providing "federal funding" or "technical assistance," "it just makes good sense to reject" a broad interpretation of a preemption provision. *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 665-67 (1995); *see CTS Corp. v. Waldburger*, 573 U.S. 1, 18 (2014) (rejecting preemption where federal law left "many areas of state law untouched"); *N.Y. State Dep't of Soc. Servs. v. Dublino*, 413 U.S. 405, 421 (1973) ("Where coordinate state and federal efforts exist within a complementary administrative framework, and in the pursuit of common purposes, the case for federal pre-emption becomes a less persuasive one."). It would be strange indeed if the County's code were found to conflict with federal law when DOE, pursuant to a

11

congressional mandate, helped fund that code.  At the least, Congress's continued efforts to support and preserve complimentary state building energy codes— including codes that shift buildings' reliance on fossil fuels to renewable energy— makes plain that EPCA does not "sweep[] broadly" and "create a national, comprehensive energy policy."  Pls.' Br. 13, 4.

## II.  Plaintiffs' Interpretation Is Wrong And Would Upset The Settled Understanding Of EPCA Preemption.

Plaintiffs' preemption theory rests on a fundamental misreading of EPCA that "would upend decades of practice," *United States v. Miller*, 604 U.S. 518, 531 (2025), and "the settled expectations" of states and localities, *Cochran v. Holder*, 564 F.3d 318, 323 (4th Cir. 2009).  Plaintiffs wrongly argue that the City's law is preempted because, by prohibiting gas appliances in new construction, it "sets" an "energy use" standard of "zero" for gas appliances.  Pls.' Br. 13.

That theory misunderstands EPCA's definition of "energy use," which the Court must follow.  *See Plumbers*, 2026 WL 1871692, at *3-5 ("[W]e are not at liberty to ignore that the statute defines 'energy use[.]'").  EPCA defines "energy use" as a fixed "representative" figure "determined" through premarket "test procedures."  42 U.S.C. §§ 6293(b)(3), 6291(4).  The "energy use" figure assigned to a product does not change based on what happens once the product enters the market.  For example, if a gas oven is manufactured, tested, and labeled in Virginia, its energy use is not magically reset to 0 British thermal units when a delivery truck

12

crosses the Legion Bridge. Plaintiffs' contrary theory—conflating EPCA's concept of "energy use" with their own concept of actual energy consumption—would improperly preempt any state law affecting whether or if EPCA-covered appliances can be used. Nothing in the text or structure of EPCA supports that anomalous position. *See Plumbers*, 2026 WL 1871692, at *4 ("[A] product's 'energy use' is a standardized, fixed measure assigned to a product before it reaches consumers.").

Moreover, Plaintiffs' arguments about zero energy use are misguided because there is no such thing as zero energy use under EPCA. "Energy use" is "determined" "during a representative average *use* cycle or period of *use*," so the product must operate to determine the "quantity of energy directly consumed." *Id.* §§ 6293(b)(3), 6291(4) (emphases added). No product can operate for a period or cycle on zero energy. So "energy use" must be a "quantity," *id.* § 6291(4), but "zero" is "the absence of a measurable quantity," *Zero*, Merriam-Webster Dictionary, https://tinyurl.com/4snaz7a3 (last visited June 30, 2026).

Plaintiffs' atextual and illogical theory also lacks historical support. Indeed, Plaintiffs cannot point to any source in EPCA's history reading EPCA as they do, besides one aberrational case: *California Rest. Ass'n v. Berkeley*, 89 F.4th 1094 (9th Cir. 2024). That is a tell-tale sign that Plaintiffs' interpretation is wrong. *See Mellouli v. Lynch*, 575 U.S. 798, 813 (2015) (recognizing that when a "sweeping

interpretation departs so sharply from the statute's text and history," "it cannot be considered a permissible reading").

And if more were needed, the Second Circuit recently joined the "growing consensus" of courts to reject *Berkeley* and hold that EPCA does not preempt state or local laws that "effectively prohibit the use of fossil-fuel-powered appliances in new buildings." *Plumbers*, 2026 WL 1871692, at *1, *13-16 & n.15 (citing cases). As the Second Circuit explained, the *Berkeley* decision "went astray" when it "ignored the second half of the statutory definition" of "energy use" because that error not only overlooked EPCA's "specialized context," it also rendered the overall "statute incoherent." *Id.* at *14. So after careful consideration, the Second Circuit declined to follow *Berkeley*'s expansive view of EPCA preemption. *Id.* at *13-16.

The United States' newfound position fares no better. Contradicting its prior construction of EPCA preemption across administrations and in this case, the United States now argues that EPCA preempts regulations that prohibit covered products or prevent them from being used. U.S. Br. 8. The United States' new position deserves no weight for at least four reasons. *See Wyeth v. Levine*, 555 U.S. 555, 577 (2009) ("The weight we accord the agency's explanation of state law's impact on the federal scheme depends on its thoroughness, consistency, and persuasiveness.").

*First*, the United States misreads EPCA. Like Plaintiffs, the United States fundamentally misunderstands "energy use" in EPCA to equate to actual energy use,

and the source of its misreading can be pinpointed: The United States does not even address section 6293(b)(3), which critically provides that EPCA's test procedures measure the "energy use" of "a covered product during a representative average use cycle or period of use." That provision is incompatible with the "zero energy use" theory, as explained above, yet it is not once mentioned in the United States' brief.

Compounding its error, the United States relies on "concerning" to further misconstrue the preemption provision, arguing that (1) "concerning" necessarily means "relating to," and (2) "relating to" always has a broadening effect. U.S. Br. 11-12, 15-16. Neither proposition is correct.

For one, "concerning" can also mean "about," "of," "regarding," or "in reference to." *Webster's Ninth New Collegiate Dictionary* 272 (1985); *The Random House Dictionary of the English Language* 423 (2d ed. 1987); *The American Heritage College Dictionary* 288 (3d ed. 1993). And in common usage, "concerning" is often used to point to a subject—in the sense of what something is "about." *E.g.*, *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 34 F.4th 1, 10 (D.C. Cir. 2022).

In contrast, "relating to" is often used to indicate "a relationship or nexus of some kind." *Dubin v. United States*, 599 U.S. 110, 119 (2023). To see the difference, consider an illustration previously provided by the United States: No one would say that World War II "concerned" a beach in Normandy, even though it

undoubtedly "related to" a beach in Normandy. *See* Br. for the U.S. & FTC at 10, *Rail Freight*, Nos. 21-7093, 21-7095 (D.C. Cir. Dec. 22, 2021), 2021 WL 6091019. Thus, "concerning" is often used in a narrower way than "relating to." *Id.*; U.S. *Montgomery* Br. 13-14. That is particularly true in the context of EPCA, where Congress used "related to" in another preemption provision, *see* 49 U.S.C. § 32919(a), thus confirming that it intended "concerning" to signal a narrower preemptive reach for present purposes, *see Cable Television Ass'n of N.Y. v. Finneran*, 954 F.2d 91, 101-02 (2d Cir. 1992) (reasoning that Congress's choice of other terms besides "relate to" expresses an intent for a preemption provision to be interpreted more narrowly); *Consumer Data Indus. Ass'n v. Frey*, 26 F.4th 1, 7-8 (1st Cir. 2022) (similar); *Sinclair Wyo. Refin. Co. v. EPA*, 114 F.4th 693, 709 (D.C. Cir. 2024) (presuming Congress acts intentionally when using language in one provision but not another, including with provisions "enacted at different times").

Several decisions illustrate the distinction between "concerning" and "relating to." In *United States v. Halseth*, 342 U.S. 277 (1952), for example, the Supreme Court held that a statute criminalizing mailing a letter "concerning any lottery" encompassed only "an existing, going lottery" and thus did not cover "the mailing of gambling paraphernalia that may be used to set up a lottery"—even though the latter plainly *relates to* "any lottery," *id.* at 279-80. Similarly, the Third Circuit, in an opinion joined by then-Judge Alito, concluded that a statute governing

16

bankruptcy cases "concerning a railroad" did not cover petitions filed by "former railroads seeking bankruptcy adjustment of assets and liabilities obtained while they were railroads"—even though such petitions plainly *relate to* "a railroad." *In re Pittsburgh & Lake Erie Props., Inc.*, 290 F.3d 516, 519 (3d Cir. 2002). And the D.C. Circuit construed "discussion or agreement [that] concerned an interline movement of the rail carrier" to refer to discussions or agreements "about" "shared interline traffic" but not discussions or agreements about single-line traffic—even though the latter discussions and agreements may *relate to* "an interline movement." *Rail Freight*, 34 F.4th at 10-11.

But even if "concerning" meant "relating to" in EPCA, that phrase is not determinative "because a clever person can conjure up 'infinite relations' among things." *Dominion Energy, Inc. v. City of Warren Police & Fire Ret. Sys.*, 928 F.3d 325, 337 (4th Cir. 2019) (quoting *Travelers*, 514 U.S. at 656). So the Court must "assess and implement the purpose and objective of" EPCA to determine precisely what regulations "relate to" energy use. *Id.* at 338; *see Mellouli*, 575 U.S. at 808-13 & nn.9-11 (construing "relating to" narrowly to "require[] a direct link" based on structure, context, and history). EPCA was never intended to preempt any law that affects covered products' actual usage, so "concerning" cannot reach those laws. Therefore, the United States is wrong about "concerning" twice over: (1) it does not

always mean "relating to," and even if it did, (2) "relating to" is neither determinative nor inherently broad.

*Second*, the United States' current position does not reflect a consistent or reasoned position. *See Wyeth*, 555 U.S. at 577-78 (giving FDA's views little weight for this reason). Far from it. The United States' new position effectively reverses DOE's longstanding views without reasoned explanation and is diametrically opposed to arguments it has made in three other briefs. *See* note 2, *supra*. Worse, the United States shows no awareness of many of DOE's past pronouncements on EPCA preemption, *e.g.*, 75 Fed. Reg. 59470, 59530, or of DOE's statutorily mandated programs supporting the types of state and local laws that its new position threatens, Argument § I.B, *supra*. Worse still, although the United States decries building electrification laws as contrary to federal policy, *see, e.g.*, U.S. Br. 29-30, its brief appears unaware that EPCA, as amended, requires a phase-out of fossil fuels in federal buildings such that, after 2030, "new Federal buildings and Federal buildings undergoing major renovations" must have no "fossil fuel-generated energy consumption." 42 U.S.C. § 6834(a)(3)(D)(i)(I). The United States fails to explain how the County's law is antithetical to federal law when it resembles a federal law.

The only explanation the United States gives for its reversal is that it found the *Berkeley* panel opinion "persuasive." U.S. Br. 2 n.1. But in *Berkeley*, the United States supported a petition for rehearing en banc, extensively explaining why the

18

panel opinion erred.  U.S. *Berkeley* Reh'g Br. 1-2, 11-22.  Then, in this case, the United States urged the district court not to follow *Berkeley*'s "erroneous decision."  U.S. *Montgomery* Br. 11-12.  The existence of a decision that the United States itself described as "erroneous" is hardly a reasoned explanation for such a radical shift in position.  *See Bates v. Dow Agrosciences LLC*, 544 U.S. 431, 449 (2005) (finding the United States's changed interpretation of a preemption provision "particularly dubious given that just five years ago the United States advocated the interpretation that we adopt today").

*Third*, the United States' concerns over how the County's law or similar laws may affect the EPCA program are unsupported and misguided.  *See* U.S. Br. 29-32.  To start, building electrification laws have already been implemented or enacted across the country—including by the federal government.  *See, e.g.*, 42 U.S.C. § 6834(a)(3)(D)(i)(I); N.Y.C. Admin. Code § 28-506.1(2).  Yet neither the United States nor Plaintiffs point to any evidence that manufacturers are being forced to change the design of their products or are unable to comply with DOE's energy conservation standards.  What is more, several Amici are defending against similar claims, and plaintiffs across those cases have not been able to produce such evidence either.  Additionally, the United States overstates EPCA's focus on uniformity.  Congress was concerned with one type of "patchwork": a patchwork of "State energy efficiency standards."  H.R. Rep. No. 100-11, at 24.  Any other "patchwork,"

such as diverse health and safety regulations across the states, is simply an inherent part of our federalist system. *See Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 817 (2015) (reaffirming the principles that states may experiment with policies sensitive to local needs and may differ in their policy choices).

Nor does it follow that building electrification laws frustrate DOE's ability to administer EPCA. The United States' baseline theory is that because DOE authorizes the sale of covered products if they meet federal energy conservation standards, states and localities cannot restrict access to or use of those products. US Br. 13, 29. But this Court already rejected similar logic when it held that federal authorization of certain drugs and regulation of their safety "did not create a right to utilize any particular high-risk drug" or prevent states from banning those drugs entirely. *GenBioPro*, 144 F.4th at 276.

Moreover, EPCA and the County's law "operate in different fields." *Id.* at 273. As the United States admits, energy conservation standards "are primarily performance-based" and fuel agnostic. U.S. Br. 29-30. But the County's law does not require a certain performance level from any appliances; it instead focuses on fuel type in buildings. Yet EPCA takes no position on what types of fuel an appliance can use—and certainly no position on what types of fuel *buildings* can use. Accordingly, and as the United States previously explained, the County's law

20

does not affect DOE's administration of EPCA. *See* U.S. *Montgomery* Br. 8. In fact, electric appliances must comply with the applicable energy conservation standards, and nothing in the County's law would impede that requirement. *See, e.g.*, 10 C.F.R. § 430.32(c), (d), (j) (establishing standards for electric heat pumps, water heaters, and stoves, respectively).

*Fourth*, the United States' new position fundamentally revises EPCA and portends the sort of unprecedented intrusion into traditionally state domains that warrants strong judicial skepticism. *See Biden v. Nebraska*, 600 U.S. 477, 501-02 (2023); *Ala. Ass'n of Realtors v. HHS*, 594 U.S. 758, 764-65 (2021) (per curiam). Until now, DOE interpreted its regulatory authority and EPCA's preemptive scope to be coterminous: EPCA or DOE sets energy conservation standards, and states cannot make different energy conservation standards for those same products. U.S. *Berkeley* Reh'g Br. 6-7. But now, the United States suggests that once EPCA or DOE sets an energy conservation standard, that standard preempts an array of other state and local laws far beyond state standards or their equivalents. The United States' new position thus transforms EPCA from a program focused on improving appliances' efficiency into a deregulatory weapon of sweeping scope; and it transforms DOE from an agency that regulates one aspect of appliances into the exclusive arbiter of any regulation that could touch appliances.

That aggrandizement violates core principles that protect the states and the people from overreach by federal agencies. For one, Congress does not confer massive amounts of agency authority through minor means. *See Nebraska*, 600 U.S. at 501-02; *GenBioPro*, 144 F.4th at 276. It strains text and reason to conclude that Congress empowered DOE to nullify wide areas of state and local authority through the word "concerning" or a few references to "availability." *See* Pls.' Br. 27. For another, usually an agency cannot preempt what it cannot regulate itself. *See La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986). Yet, DOE's new interpretation of EPCA creates a serious mismatch between its regulatory authority under EPCA and EPCA's preemptive scope.

## III. Upsetting The Understanding Of EPCA Would Have Severe Consequences For States And Localities.

### A. Plaintiffs' interpretation would threaten to preempt a startling swath of laws.

Adopting Plaintiffs' view of EPCA could invite litigation against any state or local law that affects whether covered products can be used on the misguided theory that they "set[]" an appliance's "energy use at zero." Pls.' Br. 3. That is reason enough to reject Plaintiffs' position. *See Plumbers*, 2026 WL 1871692, at *13 (rejecting similar EPCA preemption claim as "far-fetched" and leading to "absurd results"); *see also Kansas v. Garcia*, 589 U.S. 191, 206 (2020) (rejecting express-preemption claim that yielded "strange consequences").

A few examples illustrate the point. According to Plaintiffs and the United States, EPCA-covered products simply cannot be banned or their usage restricted, *see* Pls.' Br. 31; U.S. Br. 29, yet states have long prohibited or regulated EPCA-covered products to ensure consumer safety. For example, because EPCA covers home heating equipment,[3] Plaintiffs' theory could call into question longstanding state laws banning fossil-fuel-burning space heaters,[4] which pose a deadly risk of fire and carbon-monoxide poisoning,[5] none of which DOE has ever objected to before.[6] Likewise, because EPCA covers various types of lightbulbs,[7] Plaintiffs' theory could also call into question state laws banning lightbulbs that contain

---

[3]     *See* 42 U.S.C. § 6292(a)(9) (listing "[d]irect heating equipment" as a covered product); 10 C.F.R. § 430.2 (defining "[d]irect heating equipment" as "vented home heating equipment and unvented home heating equipment").

[4]     *E.g.*, Cal. Health & Safety Code § 19881(a) (unvented natural gas heaters); 425 Ill. Comp. Stat. Ann. §§ 65/8, 65/9 (kerosene heaters); N.Y. Real Prop. Law § 239-e (kerosene heaters).

[5]     FDNY Found., *Don't Use Kerosene or Propane Space Heaters*, https://perma.cc/44ZA-H8L3 (last visited June 30, 2026).

[6]     *See* DOE, *Small Space Heaters*, https://perma.cc/KJK9-Z67L (last visited June 30, 2026) (recognizing that "[m]ost states have banned unvented kerosene heaters for use in the home" and "California, and some other cities and counties, have banned the use of unvented natural gas heaters in the home").

[7]     *See* 42 U.S.C. § 6292(a)(14) (listing "[g]eneral service fluorescent lamps" and "general service incandescent lamps" as covered products); 10 C.F.R. § 430.2 (defining "[g]eneral service fluorescent lamps" and "general service incandescent lamps"); *id.* § 430.32(n), (dd) (energy conservation standards for various lamps).

mercury,[8] even though such laws have nothing to do with energy efficiency regulation.[9]

Next, Plaintiffs' position could affect state laws regulating the use of covered products in certain buildings.[10] Public universities, for instance, usually ban a laundry list of items in student housing that could qualify as covered products under EPCA. *E.g.*, Ohio Admin. Code § 3341-2-15(F)(4). Yet Plaintiffs' theory in this case leads to the untenable conclusion that universities set a performance standard of zero energy use when they tell freshmen not to bring their own microwaves—as well as the equally untenable conclusion that college students can come to court and claim a right to use any covered appliance in dorms.

Plaintiffs' interpretation could also threaten state laws regulating zoning and products liability. Zoning laws, for example, can restrict the use of industrial-grade appliances in residential areas or otherwise limit whether owners may install appliances. *See, e.g.*, *Wash. Gas Light Co. v. Prince George's Cnty. Council*, 711 F.3d 412, 421 (4th Cir. 2013) ("[T]he power to impose a zoning requirement includes the power to preclude any proposed usage of the zoned area that cannot

---

[8]    *E.g.*, R.I. Gen. Laws §§ 23-24.9-2, 23-24.9-6.1; Minn. Stat. § 116.92(7b).

[9]    *See* Vt. Dep't of Envtl. Conserv., *10 VSA §7152(a) Sale of Mercury-Containing Lamps Final Determination Notice*, https://perma.cc/3N2E-LJ8K (last visited June 30, 2026).

[10]    *See*, *e.g.*, L.A. Mun. Code § 57.605.10.2 (prohibiting certain heating and lighting products in industrial buildings).

comply with such requirement."); *Melillo v. Brais*, No. 3:17-cv-520, 2019 WL 1118091, at \*1-2 (D. Conn. Mar. 11, 2019) (rejecting constitutional claims arising from a town ordering removal of appliances from apartments in a detached garage for noncompliance with zoning regulations). And manufacturers have gone so far to argue that ordinary design-defect and consumer-protection claims are preempted by EPCA under Plaintiffs' theory. *E.g.*, Mem. of P. & A. in Supp. of Def.'s Mot. to Dismiss 3-4, *Sherzai v. LG Elecs. USA, Inc.*, No. 2:23-cv-429 (E.D. Cal. May 12, 2023), ECF No. 14-1; Def.'s Mem. of L. in Supp. of Mot. to Dismiss 3-4, *Hess v. Samsung Elecs. Am., Inc.*, 3:23-cv-50106 (N.D. Ill. June 5, 2023), ECF No. 19. Plaintiffs' expansive theory, if accepted, could create a de facto immunity from zoning laws and products-liability litigation that Congress could not possibly have intended.

Still further, Plaintiffs' interpretation could also obstruct laws that seek to achieve state and local emission- and air-pollution-related goals. Buildings are responsible for 35% of greenhouse gas emissions. Susannah Shoemaker, *NREL Researchers Reveal How Buildings Across United States Do—and Could—Use Energy*, Nat'l Lab'y of the Rockies (Sept. 14, 2023), https://perma.cc/KY4D-DU9E. Buildings' combustion of fossil fuels likewise releases various air pollutants such as nitrogen oxides, sulfur dioxide, volatile organic compounds, and ammonia. Brady Seals & Leah Louis-Prescott, *Uncovering the Deadly Toll of Air Pollution From*

*Buildings*, RMI (May 5, 2021), https://perma.cc/LS4B-G6E8. Because buildings account for a large portion of emissions and pollution, many jurisdictions have taken decisive action on buildings' combustion of fossil fuels (the primary cause of site greenhouse gas emissions and other air pollution). *See, e.g.*, Clean Energy DC Building Code Amendment Act of 2022, D.C. Council, Report on Bill 24-420, at 1 (June 13, 2022), https://perma.cc/6E4D-ZETE; Gov. Jared Polis, *Colorado Greenhouse Pollution Reduction Roadmap 2.0* 14-19, 56-61 (Feb. 2024), https://perma.cc/6GU7-EW8H; 25 Colo. Code Regs. § 1001-32. But Plaintiffs contend that such policy responses are off-limits—never mind that nothing in EPCA clearly precludes them.

Plaintiffs do not even try to explain away these consequences of their interpretation. For its part, the United States urges the Court to blind itself to what laws would fall within the "scope" of its new interpretation. *See* U.S. Br. 30. But the Court's "task is to 'identify the domain expressly pre-empted'" by EPCA. *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 259 (2013) (quoting *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 541 (2001)). "That the statute *would* apply so broadly" under their theory to potentially preempt the laws identified above (and more) may be "the inescapable conclusion of [Plaintiffs'] position." *Bond v. United States*, 572 U.S. 844, 862 (2014). If it is, the Court should consider those astounding consequences in determining EPCA's true preemptive scope.

**B.    Plaintiffs' interpretation lacks clear, administrable rules that states and localities need.**

Plaintiffs' interpretation is not just broad—it appears limitless. Plaintiffs do not even try to articulate any limit on their interpretation. The United States does not either, except to suggest that invalidating the County's law may not require preemption of "health and safety regulations[]" with "incidental impacts on covered products." U.S. Br. 30-31. The United States offers neither a text-based reason for this distinction nor standards for determining what is an "incidental impact."

Plaintiffs' limitless interpretation will thus create significant problems for states and localities—not to mention courts—which need "workable standards" for preemption. *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 319 (2016). If states and localities can understand the metes and bounds of a preemption provision, then they can make policies that comply with federal law. Legislating with an eye toward clearly demarcated federal law also makes it less likely that governments will later have to defend against preemption challenges. But when the limits of a preemption provision are unclear, as they are under Plaintiffs' interpretation, policymakers are left to stumble in the dark, and government attorneys are left to defend against claims capitalizing on a preemption provision's indeterminacy.

Amici know firsthand that these problems attend Plaintiffs' interpretation. For most of EPCA's history, there were vanishingly few preemption challenges because it was widely understood that EPCA preempted only a narrow slice of laws.

27

But all that changed with the Ninth Circuit's outlier panel opinion in *Berkeley*, which unleashed a wave of challenges in which plaintiffs leverage EPCA to attempt to overturn state and local policies they dislike. The effects extend past the courthouse to the statehouse. Opponents of health and environmental policies have used the *Berkeley* opinion to pressure lawmakers to drop consideration of those policies, rather than risk litigation or pursue the costly, timely, and likely unavailing waiver process. *See, e.g.*, David Iaconangelo, *Washington State Hits the Brakes on Landmark Gas Ban*, E&E News (May 25, 2023), https://perma.cc/6BUW-5YG9.

This cannot be what Congress intended. This Court should confine EPCA to its text and traditional understanding by rejecting Plaintiffs' misinterpretation.

## CONCLUSION

The Court should affirm the district court's judgment.

Respectfully submitted,

BRIAN L. SCHWALB
Attorney General for the District of Columbia

/s/ Caroline S. Van Zile
CAROLINE S. VAN ZILE
Solicitor General

ASHWIN P. PHATAK
Principal Deputy Solicitor General

ADAM J. TUETKEN
BRYAN J. LEITCH
ROMINA LILOLLARI

Assistant Attorneys General

Office of the Attorney General
400 6th Street, NW, Suite 8100
Washington, D.C. 20001
(202) 724-6609
caroline.vanzile@dc.gov

July 2026

On behalf of:

PHILIP J. WEISER
*Attorney General*
State of Colorado

WILLIAM TONG
*Attorney General*
State of Connecticut

ANNE E. LOPEZ
*Attorney General*
State of Hawaii

KWAME RAOUL
*Attorney General*
State of Illinois

ANTHONY G. BROWN
*Attorney General*
State of Maryland

ANDREA CAMPBELL
*Attorney General*
Commonwealth of Massachusetts

DANA NESSEL
*Attorney General*
State of Michigan

KEITH ELLISON
*Attorney General*
State of Minnesota

JENNIFER DAVENPORT
*Attorney General*
State of New Jersey

RAÚL TORREZ
*Attorney General*
State of New Mexico

LETITIA JAMES
*Attorney General*
State of New York

DAN RAYFIELD
*Attorney General*
State of Oregon

CHARITY R. CLARK
*Attorney General*
State of Vermont

STEVEN BANKS
*Corporation Counsel*
City of New York

**CERTIFICATE OF FILING AND SERVICE**

I certify that on July 2, 2026, an electronic copy of the foregoing was filed with the Clerk of Court using the electronic filing system and thereby served upon all counsel appearing in this case.

/s/ Caroline S. Van Zile
CAROLINE S. VAN ZILE

**CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with the type-volume limitation in Federal Rule of Appellate Procedure 29(a)(5) because the brief contains 6,458 words, excluding exempted parts.  This brief complies with the typeface and type style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Times New Roman 14-point font.

/s/ Caroline S. Van Zile
CAROLINE S VAN ZILE