**No. 26-1449**

IN THE

# United States Court of Appeals
# for the Fourth Circuit

---

NATIONAL ASSOCIATION OF HOME BUILDERS OF THE UNITED STATES, *et al.*,

*Appellants*,

*v.*

MONTGOMERY COUNTY, MARYLAND,

*Appellee*.

---

On Appeal from the U.S. District Court for the
District of Maryland, No. 8:24-cv-03024-PX

---

## REPLY BRIEF OF APPELLANTS

---

Scott Novak
BAKER BOTTS L.L.P.
700 K Street NW
Washington, D.C. 20001
(202) 304-5099
scott.novak@bakerbotts.com

J. Mark Little
BAKER BOTTS L.L.P.
910 Louisiana Street
Houston, TX 77002
(713) 229-1489
mark.little@bakerbotts.com

Daniel B. Rankin
BAKER BOTTS L.L.P.
401 S. 1st Street, Ste. 1300
Austin, TX 78704
(737) 393-7297
daniel.rankin@bakerbotts.com

*Counsel for National Association of Home Builders of the United States,
Restaurant Law Center, National Federation of Independent Business, Inc.,
Maryland Building Industry Association, Washington Gas Light Company, and
National Propane Gas Association*

*Additional counsel and parties listed on next page*

Abigail V. Carter
BREDHOFF & KAISER, P.L.L.C.
805 15th St. NW, Ste. 1000
Washington, D.C. 20005
(202) 842-2600
acarter@bredhoff.com

*Counsel for Philadelphia-Baltimore-Washington Laborers' District Council*

Lauren McDermott
MOONEY, GREEN, SAIDON, MURPHY & WELCH, P.C.
1920 L St. NW
Washington, D.C. 20036
(202) 783-0010
lmcdermott@mooneygreen.com

*Counsel for Teamsters Local 96*

ii

# TABLE OF CONTENTS

Table of Contents .................................................................................................. iii

Table of Authorities ............................................................................................. iv

Argument ............................................................................................................... 1

I.     Plaintiffs' preemption challenge is justiciable. .......................................... 1

     A.     Plaintiffs have demonstrated both present and future harm from the County Gas Ban. ........................................................................ 1

     B.     The fundamental nature of Plaintiffs' challenge and harm will remain the same regardless of any tweaks the County Executive includes in the implementing regulations. ........................................ 8

II.     EPCA preempts the County Gas Ban. ...................................................... 11

     A.     The County Gas Ban would be preempted even under the County's narrow interpretation of EPCA's preemption provision. ..................................................................................... 11

     B.     The County's view of EPCA preemption cannot be squared with the text, structure, history, and purpose of the statute. ....................... 16

III.     *Amici*'s arguments cannot save the County Gas Ban. ............................... 21

IV.     Plaintiffs are entitled to declaratory and injunctive relief. ........................ 26

Certificate of Compliance .................................................................................... 30

Certificate of Service ........................................................................................... 31

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ass'n of Contracting Plumbers of the City of New York, Inc. v. City of New York*,
No. 25-2041, 2026 WL 1871692 (2d Cir. June 30, 2026)..............................9, 20

*California Restaurant Association v. City of Berkeley*,
89 F.4th 1094 (9th Cir. 2024) ...................................................................15, 20

*Crandon v. United States*,
494 U.S. 152 (1990).......................................................................................18

*Dan's City Used Cars, Inc. v. Pelkey*,
569 U.S. 251 (2013)..................................................................................16, 17

*Dep't of Comm. v. New York*,
588 U.S. 752 (2019).........................................................................................8

*Diamond Alternative Energy, LLC v. EPA*,
606 U.S. 100 (2025).....................................................................................5, 6

*FDA v. Alliance for Hippocratic Medicine*,
602 U.S. 367 (2024).........................................................................................4

*Franks v. Ross*,
313 F.3d 184 (4th Cir. 2002) ...........................................................................8

*Friends for Ferrell Parkway, LLC v. Stasko*,
282 F.3d 315 (4th Cir. 2002) ...........................................................................4

*Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*,
528 U.S. 167 (2000).........................................................................................6

*FS Credit Opportunities Corp. v. Saba Capital Master Fund, Ltd.*,
146 S. Ct. 1546 (2026).....................................................................................20

*GenBioPro, Inc. v. Raynes*,
144 F.4th 258 (4th Cir. 2025) ...........................................................................6

iv

*Great Lakes Gas Transmission Ltd. v. FERC*,
  984 F.2d 426 (D.C. Cir. 1993)........................................................................3

*Holland v. Burlington Indus., Inc.*,
  772 F.2d 1140 (4th Cir. 1985) ......................................................................26

*Kan. City S. Ry. Co. v. Road Imp. Dist. No. 3 of Sevier Cnty., Ark.*,
  266 U.S. 379 (1924)........................................................................................5

*Lebron v. Rumsfeld*,
  670 F.3d 540 (4th Cir. 2012) ........................................................................25

*Mulhern Gas Co. v. Mosley*,
  798 F. Supp. 3d 304 (N.D.N.Y. 2025)........................................................9, 10

*Nat'l Fed'n of Indep. Bus. v. Sebelius*,
  567 U.S. 519 (2012)......................................................................................25

*Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*,
  461 U.S. 190 (1983)........................................................................................2

*Pharm. Coal. for Patient Access v. United States*,
  126 F.4th 947 (4th Cir. 2025) .......................................................................19

*Reg'l Mgmt. Corp. v. Legal Servs. Corp.*,
  186 F.3d 457 (4th Cir. 1999) ........................................................................11

*Retail Industry Leaders Ass'n v. Fielder*,
  475 F.3d 180 (4th Cir. 2007) ......................................................................9, 10

*Rowe v. N.H. Motor Transp. Ass'n*,
  552 U.S. 364 (2008)......................................................................................26

*San Diego Gas & Electric Co. v. FERC*,
  913 F.3d 127 (D.C. Cir. 2019).........................................................................3

*Snyder v. Phelps*,
  580 F.3d 206 (4th Cir. 2009) ........................................................................22

*Susan B. Anthony List v. Driehaus*,
  573 U.S. 149 (2014)........................................................................................6

v

*TransUnion LLC v. Ramirez,*
  594 U.S. 413 (2021)....................................................................................4

*Whitman v. Am. Trucking Ass'ns, Inc.,*
  531 U.S. 457 (2001).................................................................................19

**STATUTES AND REGULATIONS**

42 U.S.C. § 6291 ..........................................................................12, 13, 14

42 U.S.C. § 6292 ................................................................................18, 19

42 U.S.C. § 6295 ........................................................................18, 19, 23

42 U.S.C. § 6297 .......................................... 12, 16, 19,  22, 23, 24

42 U.S.C. § 6311 .............................................................12, 13, 14, 24

Montgomery County Code § 8-14D ...................................................13, 15

10 C.F.R. § 430.32(j) ..............................................................................13

76 Fed. Reg. 51,281, 51,283 (Aug. 18, 2011) .......................................19

## ARGUMENT

### I.   Plaintiffs' preemption challenge is justiciable.

The County does not dispute that a ban on gas combustion in many new buildings will come into effect in Montgomery County. Yet it insists that Plaintiffs cannot challenge that ban due to standing and ripeness deficiencies. The County is mistaken. As the district court recognized, Plaintiffs have demonstrated both present and future harm from the County Gas Ban and this challenge is ripe for review. JA5-9.

#### A.   Plaintiffs have demonstrated both present and future harm from the County Gas Ban.

The County claims that "[n]o Plaintiff cites existing or current hardship due to the [County Gas Ban]" and that Plaintiffs' evidence of "potential future injuries" is "wholly speculative and not imminent." County.Br.20, 23. That is wrong on both counts. The County Gas Ban is causing harm *now*, and that harm will only worsen once the County's regulations go into effect. *See* Opening.Br.44-46. As the district court concluded, that is more than enough to establish the injury-in-fact and hardship necessary for standing and ripeness. JA6-9.

1.   The decision to use gas in new developments and custom homes must be made *years* in advance, meaning the County Gas Ban "has an effect now on the choices builders and developers must make regarding the use of gas." JA146; *see also* JA146 ("up to two years" for large developments); JA150 ("up to one year" for

1

custom homes). The resulting pressure to use electricity over gas harms Plaintiffs. Because natural gas is preferred by most homebuyers, "potential customers may opt to purchase homes in other counties or in Virginia due to the ban." JA146. And because builders "will be required to incur additional costs to comply with all-electric standards," clients of limited means "may find themselves unable to afford new homes" at that higher price point, which is "likely to result in a decrease in new home construction." JA150. Thus, the County Gas Ban is already "negatively affecting [builders' and developers'] financial operations and influencing [their] business decisions." JA146, JA150. That is real Article III harm. *See Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201-02 (1983) ("requir[ing] the industry to proceed without knowing whether the [law] is valid would impose a palpable and considerable hardship").

The harm extends beyond builders because the pressure to avoid gas has downstream effects. Manufacturers of gas appliances like Rinnai America Corporation "will face significant sales losses if potential customers in Montgomery County choose to avoid gas appliances" due to the County Gas Ban. JA154. The same is true for gas vendors like Holtzman Propane. *See* JA165 (describing similar harms).

Gas utilities like Washington Gas Light Company ("WGL") feel the effects, too. The County Gas Ban "has caused the present loss of would-be customers and

2

threatens to erode [WGL's] customer base through the permanent loss of new customers and existing customers over time." JA168. This limitation on WGL's customer growth will result in "higher rates for gas customers." JA168. That is because "[c]ustomer growth helps to ensure that th[e] costs [for gas infrastructure] can be spread over a growing customer base and helps to keep costs for all of our customers at an affordable level." JA168. The resulting higher rates will harm all gas customers, including many Plaintiffs. *See* JA146, JA150, JA159, JA172.

In these ways, the County Gas Ban is already inflicting "a concrete and immediate economic injury" by making these businesses "less attractive investment[s]." *San Diego Gas & Electric Co. v. FERC*, 913 F.3d 127, 136 (D.C. Cir. 2019). "[T]o find otherwise would ignore the reality of the long-range economic planning involved in the sound management of an enterprise." *Great Lakes Gas Transmission Ltd. v. FERC*, 984 F.2d 426, 431 (D.C. Cir. 1993).

Union workers will experience the fallout as well. Fewer gas lines, pipes, and meters directly translate into less work for the union workers who build and maintain that gas infrastructure. JA172, JA176. That, in turn, will lead to fewer members and weaker bargaining power for the unions. JA173, JA176.

2.    The County writes off Plaintiffs' harms as "future injuries[] which are wholly speculative and not imminent," County.Br.23, but that is not the case. First, as detailed above and as the district court recognized, the County Gas Ban is

3

inflicting harm on Plaintiffs *now*. JA7, JA9. Second, the worsening of Plaintiffs' harm once the regulations go into effect is far from speculative and not based on "pure conjecture." *Friends for Ferrell Parkway, LLC v. Stasko*, 282 F.3d 315, 322 (4th Cir. 2002). Rather, Plaintiffs' harm is grounded in a predictable chain of events that is virtually certain to occur absent judicial intervention. *See FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367, 385 (2024) (holding that, to establish standing, "the plaintiff must show a predictable chain of events leading from the government action to the asserted injury"). And third, Plaintiffs' harm is imminent. Putting aside the harm Plaintiffs are already experiencing, the regulations implementing the gas ban must be issued within the next six months. The result is both a present "concrete" harm and a "risk of [future] harm [that] is sufficiently imminent and substantial" to confer standing. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 435 (2021).

The County next dismisses Plaintiffs' declarations regarding lost sales, lost customers, lost work, negative impacts on gas-related trades, and increased gas costs as "conclusory and speculative statements." County.Br.24. But there is nothing conclusory or speculative there. The County does not dispute that the gas ban will result in fewer buildings having gas service. That is the entire point of it. From there, commonsense inference shows that sales of gas and gas-related products will decline, gas utilities and sellers of gas-related products will lose customers, those employed in gas-related trades will lose work, gas-related trades will become less

4

attractive, and gas costs will increase. *See* JA146, JA150, JA154, JA158-159, JA162, JA165, JA168, JA172; *see also Kan. City S. Ry. Co. v. Road Imp. Dist. No. 3 of Sevier Cnty., Ark.*, 266 U.S. 379, 388 (1924) ("Forecast and estimate, based on a solid premise of fact and experience, are not to be confused with mere speculation and conjecture."). So, this is not a case about "[a] potential threat of loss of customers or loss of work that may or may not occur someday in the future," County.Br.24, but rather one focused on concrete harm that is occurring now and will only worsen as the County Gas Ban approaches final implementation. As the district court recognized, those "injuries are sufficiently concrete and imminent to confer standing." JA7.

3.     The Supreme Court's recent decision in *Diamond Alternative Energy, LLC v. EPA*, 606 U.S. 100 (2025), is instructive. There, fuel producers sued the EPA after it approved state regulations that forced the electrification of new vehicle fleets. *Id.* at 107-08. The fuel producers grounded their harm in the likelihood that "the demand for gasoline and diesel fuel will be depressed" and that the state regulations will cause "substantial reductions in demand for gasoline." *Id.* at 108.

The Supreme Court held that these allegations sufficed to establish standing. *Id.* at 113. "The regulations likely cause fuel producers' monetary injuries," the Court explained, "because the regulations likely cause a decrease in purchases of gasoline and other liquid fuels for automobiles." *Id.* at 114. Thus, the Court

concluded, "it is 'likely' that invalidating the California regulations would result in more revenue for the fuel producers from additional sales of gasoline and other liquid fuels." *Id.* "In short," the Court held, "the commonsense economic inferences about the operation of the automobile market … make it sufficiently 'predictable' that invalidating California's regulations would likely redress the fuel producers' injury." *Id.* at 120.

Like the allegations in *Diamond Alternative Energy*, Plaintiffs' declarations "'show a predictable chain of events' that would likely result from judicial relief and redress the plaintiff's injury." *Id.* at 121; *see* JA146, JA150, JA158, JA159, JA168, JA172 (Plaintiffs' declarations demonstrating their harm).[1] As this Court recently observed, "a statute banning the use of a product plainly causes economic injury in the form of lost sales." *GenBioPro, Inc. v. Raynes*, 144 F.4th 258, 269 (4th Cir. 2025). The County Gas Ban likewise causes economic injury in the myriad forms discussed above. At a minimum, that poses a "substantial risk" of harm, *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014), that "is likely, as opposed to merely speculative," *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 181 (2000).

---

[1] The Court further made clear that plaintiffs need not "introduce evidence from expert economists or from directly regulated third parties to show how third parties would likely respond to a government regulation or invalidation thereof." *Diamond Alternative Energy*, 606 U.S. at 120-21.

6

4. None of the County's distinguishable authorities are to the contrary. Starting with *Ohio Forestry Association v. Sierra Club*, the most important difference is that here the County Gas Ban is *already* causing harm, whereas in *Ohio Forestry* the ripeness analysis focused on future harm alone. 523 U.S. 726, 738 (1998) (holding that the plaintiffs failed to preserve their claims of present harm). The Supreme Court observed that "the ripeness analysis in this case … would be significantly different" had the plaintiffs demonstrated present, as opposed to future, harm. *Id.* Another difference is that while the plan challenged there "d[id] not command anyone to do anything or to refrain from doing anything," *id.* at 733, here the County Gas Ban commands the County Executive to promulgate implementing regulations. For that reason and others, the future harm the plaintiffs sought to avoid there—the logging of certain forests—was remote and should be "challenge[d] at a time when harm is more imminent and more certain." *Id.* at 734. Here, by contrast, the County Gas Ban has a much more direct connection to the ultimate banning of gas in new buildings in the County, and its impact is already being felt by Plaintiffs.

*Wild Virginia v. Council on Environmental Quality* does not change the result here, either. 56 F.4th 281 (4th Cir. 2022). True, "injuries that are contingent upon a decision to be made by a third party that has not yet acted are not ripe." *Id.* at 296 (internal quotations omitted). But Plaintiffs' injuries are not contingent; they are present and already occurring. And even as to Plaintiffs' future injuries, the Supreme

7

Court has made clear that while parties may not rely on "mere speculation about the decisions of third parties," they can "rel[y] instead on the predictable effect of Government action on the decisions of third parties." *Dep't of Comm. v. New York*, 588 U.S. 752, 768 (2019). That is the case here. The "predictable effect" of the County Gas Ban is fewer buildings with gas and less demand for gas and gas-related products and services, all to Plaintiffs' detriment.

It is much the same with *Franks v. Ross*, 313 F.3d 184 (4th Cir. 2002). In that case, "there remained several obvious factual contingencies that put the Landfill's construction in serious doubt." *Id.* at 195. No such "serious doubt" exists here regarding the banning of gas combustion in certain buildings in the County and the harm the County Gas Ban is already causing.

**B.    The fundamental nature of Plaintiffs' challenge and harm will remain the same regardless of any tweaks the County Executive includes in the implementing regulations.**

The County's claim that the case is not justiciable because the "full scope of the law will not be known until the regulations are promulgated" is also wrong. County.Br.22.

1.    The County focuses on how the regulations may impact Plaintiffs' harm. *See id.* at 19, 21-24. Yet the County ignores Plaintiffs' ongoing harm. Equally importantly, much of Plaintiffs' harm is based on the undisputed fact that the County Gas Ban will result in fewer buildings in Montgomery County having gas service.

*See supra* § I.A.1. So, no matter how the County Executive fleshes out a few exemptions, that will be the inevitable result. A ban on gas appliances in some buildings will, in turn, cause the number of gas customers to fall, the sale of gas appliances to decline, work on gas lines to decrease, and the cost of gas to rise. *See* JA146, JA150, JA154, JA158, JA159, JA162, JA165, JA168, JA172, JA176 (Plaintiffs' declarations chronicling these harms); *see also Mulhern Gas Co. v. Mosley*, 798 F. Supp. 3d 304, 323 (N.D.N.Y. 2025) ("It cannot be logically disputed … that a prohibition on the installation of fossil-fuel equipment in new buildings will have some tangible negative impact on Plaintiffs' businesses . . . ."), *aff'd sub nom. Ass'n of Contracting Plumbers of the City of New York, Inc. v. City of New York*, No. 25-2041, 2026 WL 1871692 (2d Cir. June 30, 2026). That harm will remain regardless of whatever exemptions the implementing regulations include.

This Court's opinion in *Retail Industry Leaders Association v. Fielder*, 475 F.3d 180 (4th Cir. 2007), is illustrative. There, as here, the law's implementing regulations had not yet been promulgated. *Id.* at 188. Yet, recognizing that the "[r]egulations could not alter the Act's provisions," this Court held that the plaintiff had standing and asserted a ripe claim because the plaintiff's member would "very likely incur liability to the State under the Act[]" and therefore faced an "imminent injury." *Id.* at 186, 188. So too here. The County Executive's implementing regulations cannot alter the County Gas Ban itself, and Plaintiffs face the injuries

9

chronicled above if the County Gas Ban remains in force. *Cf. Mulhern Gas Co.*, 798 F. Supp. 3d at 322 ("The Court therefore rejects Defendant's argument that the content of the Code amendments that will eventually be adopted is too speculative or unknowable to be the basis of Plaintiffs' assertion of an imminent future injury.").

The County attempts to distinguish *Retail Industry* by asserting that it was based on "the fact that to comply with the law's spending and reporting requirements, a party had to alter its accounting procedures and spending prior to the regulations' effective date" and claiming that "there is no similar requirement for any Plaintiff to take any action or alter any business practices before the [County Gas Ban]'s effective date." County.Br.22. That gets it wrong in several ways. First, while the Court held that the law's "reporting requirements impose administrative burdens on Wal-Mart even now," it also based its holding on Wal-Mart's "impending" and "imminent injury," as noted above. *Retail Indus. Leaders Ass'n*, 475 F.3d at 186. So, the Court did not hold that only current, as opposed to imminent, harm suffices for standing. Second, even if current harm were required, Plaintiffs have demonstrated that here. *See supra* § I.A.1. As the district court recognized, "businesses have already been affected by the impending gas ban." JA9.

2.     The County also does not dispute Plaintiffs' point that whatever tweaks are included in the implementing regulations will not alter the nature of the preemption question before the Court. *See* Opening.Br.49-50. Nor could it. All

10

possible iterations of the implementing regulations suffer from the same EPCA preemption problem. As the district court noted, "if, as Plaintiffs urge, the EPCA preempts Bill 13-22, then no further regulatory work on the Bill's exceptions will matter." JA8. For that same reason, the district court held that the "question is narrowly circumscribed and a well-defined question of law" that is "fit for resolution now." JA8. Accordingly, there is no reason to await further "crystalliz[ation] [of the] policy before that policy is subject to review" or any significant "interest in avoiding unnecessary adjudication and in deciding issues in a concrete setting." *Reg'l Mgmt. Corp. v. Legal Servs. Corp.*, 186 F.3d 457, 465 (4th Cir. 1999).

## II.    EPCA preempts the County Gas Ban.

Whereas the County engages with the justiciability issues, it largely evades on the merits questions. It all but ignores Plaintiffs' demonstration that the County Gas Ban is an energy conservation standard that would be preempted under even a narrow conception of EPCA's preemption provision. And where the County does engage, it offers only partial and flawed responses.

### A.    The County Gas Ban would be preempted even under the County's narrow interpretation of EPCA's preemption provision.

Although the County spills much ink on the EPCA preemption issue, it largely ignores Plaintiffs' argument that the County Gas Ban operates as the most stringent kind of energy conservation standard. *See* Opening.Br.35-36. That is fatal, for even if the County is correct on virtually every other interpretive point, the County Gas

11

Ban's operation as a competing energy conservation standard regulating covered appliances mandates its preemption under EPCA. This is the most straightforward basis for resolving the preemption question presented here.

The parties disagree on many EPCA preemption issues. One key disagreement is whether EPCA preemption is limited to regulations styled as energy conservation standards, as the County seems to assume, *see* County.Br.28-31, 34-36, or extends to all state and local laws "concerning the energy efficiency [or] energy use" of covered products, 42 U.S.C. § 6297(c), as Plaintiffs argue, *see* Opening.Br.33-35. Another disagreement concerns the meanings of "energy use" and "point of use" and how they apply to EPCA's preemption provision. *Compare* Opening.Br.37-41, *with* County.Br.43-48. And yet another deals with the interpretive importance of EPCA's exception, waiver, and other provisions. *Compare* Opening.Br.23-29, *with* County.Br.38-42.

Ceding all those points to the County would result in a narrow preemption provision, but even under the County's view, EPCA would still preempt state and local laws that operate as competing energy conservation standards—*i.e.,* "performance standard[s] which prescribe[] a minimum level of energy efficiency or a maximum quantity of energy use." 42 U.S.C. §§ 6291(6), 6311(18). That is fully consistent with the County's understanding of "energy use" and "point of use" and its desire to accord no interpretive weight to EPCA's exception, waiver, and other

12

provisions. But even this limited conception of EPCA preemption would still cover state and local laws that "prescribe[] a minimum level of energy efficiency or a maximum quantity of energy use" for EPCA-covered appliances. *Id.*

That means the County could not, for example, require gas appliances to have an energy use rating of 100 kBtu/year, as determined by EPCA's test procedures. That would be a textbook energy conservation standard that sets "a maximum quantity of energy use." *Id.*; *see also* 10 C.F.R. § 430.32(j) (promulgating a 1,770 kBtu/year energy conservation standard for "Gas Standalone Cooking Tops"). So would the same kind of regulation that required a different energy use rating—be it 10,000 kBtu/year or .0001 kBtu/year. Or even 0 kBtu/year. Those all set "a maximum quantity of energy use" and thus would be preempted as competing energy conservation standards. 42 U.S.C. §§ 6291(6), 6311(18).

Now consider what the County Gas Ban does. While the words "kBtu/year" do not appear in its text, it still sets a kBtu/year limit. It does so by prohibiting all "combustion equipment," meaning "any equipment or appliance used for space heating, service water heating, cooking, clothes drying and/or lighting that uses fuel gas or fuel oil," and "plumbing for combustion equipment" in covered buildings. Montgomery County Code § 8-14D(a). Combustion is how gas appliances consume energy, so translated into EPCA energy conservation standard terms, no gas appliance with an energy use rating of greater than 0 kBtu/year is permitted in

13

covered buildings. Any appliance designed to use any gas energy whatsoever is prohibited. The result is a 0 kBtu/year energy conservation standard applied to all gas appliances in covered buildings.

To further illustrate the point, imagine that the County Gas Ban prohibited not all "combustion equipment" but rather only "combustion equipment" with an energy use rating of greater than 100 kBtu/year, as determined by EPCA's test procedures. That would operate as an energy conservation standard that sets "a maximum quantity of energy use" at 100 kBtu/year for gas appliances and thus would be preempted under any conceivable construction of EPCA. 42 U.S.C. §§ 6291(6), 6311(18). The only difference between that hypothetical and this reality is that instead of a 100 kBtu/year limit, the County Gas Ban imposes the much more stringent 0 kBtu/year limit. If EPCA preempts anything, it must preempt that direct assault on its monopoly on energy conservation standards.

The County only obliquely addresses this fatal flaw that Plaintiffs spelled out in their opening brief. *See* Opening.Br.35-36, 40. The County never explains how the County Gas Ban operates any differently than a 0 kBtu/year energy conservation standard on gas appliances. Instead, it offers a handful of incorrect and conclusory assertions. For example, the County claims that the County Gas Ban "does not address … the amount of fuel an appliance consumes." County.Br.30. But it explicitly does when it prohibits "any equipment or appliance used for space heating,

14

service water heating, cooking, clothes drying and/or lighting that uses [any] fuel gas or fuel oil" whatsoever. Montgomery County Code § 8-14D(a). Similarly, the County claims that the County Gas Ban "does not in fact regulate the quantity of energy an appliance consumes during EPCA testing procedures or set that amount at zero." County.Br.31. But, again, the County Gas Ban does precisely that by prohibiting any gas appliance with an energy use rating over 0 kBtu/year.[2] In this same vein, the County insists that the County Gas Ban "does not create competing or differing appliance conservation standards." County.Br.35. But in fact the County Gas Ban operates as a 0 kBtu/year energy conservation standard for gas appliances in covered buildings.

In sum, even granting the County all its mistaken interpretive points, the County Gas Ban would still operate as a textbook energy conservation standard that falls within the core of EPCA's preemption provision.

---

[2] *Amici* assert that zero cannot be a product's energy use because "zero is the absence of a measurable quantity" and "[n]o product can operate for a period or cycle on zero energy." States.Br.13. Notably, the County never makes this argument, and for good reason. There is a plethora of authorities establishing that zero *is* a quantity. *See Berkeley*, 89 F.4th at 1102 n.4. And just because a 0 kBtu/year standard would be impossible to meet in practice does not somehow make it any less of an energy conservation standard.

15

**B.      The County's view of EPCA preemption cannot be squared with the text, structure, history, and purpose of the statute.**

Although not necessary for Plaintiffs to prevail, the County is also wrong on the preemption points where it does engage, thereby further confirming that EPCA preempts the County Gas Ban.

*First*, the County responds to Plaintiffs' discussion of the word "concerning" in EPCA's preemption provision merely by insisting that it does not mean "'the sky is the limit' for the scope of a preemption clause 'relating to' the regulated subject matter." County.Br.38 (quoting *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013)). Plaintiffs agree and have never contended otherwise. But while "concerning" may not give EPCA's preemption provision unlimited reach, it broadens it considerably. Plaintiffs walked through that point in detail in their opening brief, relying on a bevy of Supreme Court cases. *See* Opening.Br.19-22. The County offers no response.[3]

*Second*, on the interpretive import of EPCA's building code exception, the County urges the Court to ignore that provision because (1) the County "does not need the safe harbor of Section 6297(f)(3)'s exception to preemption for building codes," and (2) that exception is "inapplicable." County.Br.40. On the former, that

---

[3] *Amici* argue that "concerning" means "about" rather than "relating to" and that "concerning" is "often used in a narrower way." States.Br.16. But regardless of whether the operative phrase is "about," "concerning," or "relating to," the County Gas Ban would fall within the scope of EPCA's preemption provision.

16

misses the point. The building code exception provides insights into the reach of EPCA's preemptive provision. Whether the law at issue would otherwise be preempted (as the County Gas Ban would be) and thus needs the exception to escape preemption is a separate issue. On the latter, Plaintiffs agree that the exception is "inapplicable" to the County Gas Ban since it plainly does not qualify for it. But that is not relevant to the exception's interpretive insights regarding EPCA's preemptive reach. Lastly, Plaintiffs do not advance the discredited argument the petitioner did in *Pelkey*—that "[b]ecause [the law] do[es] not fit within any exception to preemption, … [it] must be preempted." *Pelkey*, 569 U.S. at 264. Rather, the key insight from the building code exception is that EPCA preemption must reach at least some building codes that satisfy all seven of the exception's requirements—or else the exception would serve no purpose. *See* Opening.Br.23-27. That yields an EPCA preemption provision much broader than the County would like.

*Third*, Plaintiffs detailed the interpretive insights offered by EPCA's waiver and other provisions and explained how they support a coherent framework of broad EPCA preemption. *See* Opening.Br.27-29. Yet the County claims those other provisions "have nothing to do with" EPCA's preemption provision and urges the Court to ignore the interpretive import of EPCA's "restrictions on DoE's ability to grant waivers for appliance conservation standards" and "rules … for the DoE when prescribing new energy use standards." County.Br.40, 42. But "[i]n determining the

17

meaning of the statute, we look not only to the particular statutory language, but to the design of the statute as a whole and to its object and policy," *Crandon v. United States*, 494 U.S. 152 (1990), and here those provisions provide important insights regarding the scope of EPCA preemption.

*Fourth*, the County focuses much effort on the proper meaning of "energy use" and "point of use" and how they apply to EPCA's preemption provision. County.Br.43-48. Yet nowhere in that discussion does the County contest Plaintiffs' demonstration that the County Gas Ban is preempted regardless of which definitions of these terms are used. *See* Opening.Br.37-42. But for what it is worth, the County is wrong on these definitional points.

On "energy use," the County tries to shrug off the usages of that term in §§ 6292(b)(1)(B) and 6295(*l*)(1)(B), *see* Opening.Br.39-40, by pointing out that EPCA supplies a definition for "average annual per-household energy use with respect to a type of product." County.Br.45-46. But while § 6292(b)(1)(B) employs a similar term, § 6295(*l*)(1)(B) contains nothing of the sort. And, in fact, the County's interpretation does not work even for § 6292(b)(1)(B) because the definition the County invokes there uses the term "energy use" in a manner that accounts for real-world energy usage. *See* 42 U.S.C. § 6292(b)(2)(A) (referring to "the estimated aggregate annual *energy use* (in kilowatt-hours or the Btu equivalent) of consumer products" (emphasis added)). The County also makes much of the presence of the

18

word "the" in § 6297(c) and its supposed absence in §§ 6292(b)(1)(B) and 6295(*l*)(1)(B). County.Br.47. But § 6295(*l*)(1)(B) does use the word "the," referencing "*the* aggregate household energy use within the United States." 42 U.S.C. § 6295(*l*)(1)(B) (emphasis added). And the rest is merely Congress employing standard syntax rather than some secret plan to "hide elephants in mouseholes" and smuggle in a specific meaning with a "the." *Whitman v. Am. Trucking Ass'ns, Inc.*, 531 U.S. 457, 468 (2001).[4]

As for "point of use," the County does not reach the high bar for forcing a highly technical definition despite the rule that "[t]his court generally gives undefined terms their ordinary or natural meanings." *Pharm. Coal. for Patient Access v. United States*, 126 F.4th 947, 953 (4th Cir. 2025). "Point of use" simply means the point where the product is used and thereby reinforces the focus on the energy use of products in the real world.[5]

---

[4] The County also submits that §§ 6295(*l*)(1) and 6292(b)(2) apply only "before a product is brought within the scope of EPCA as a 'covered product.'" County.Br.47-48. It is unclear what point the County is trying to make here. Plaintiffs do not dispute that "energy use" may arise in different contexts in EPCA, but those contexts shed light on the scope of EPCA's preemption provision. *See* Opening.Br.39-40.

[5] That is consistent with DOE's usage of the term. *See* 76 Fed. Reg. 51,281, 51,283 (Aug. 18, 2011) ("The point-of-use method for measuring energy consumption considers the use of electricity, natural gas, propane, and/or fuel oil by an appliance at the site *where the appliance is operated*.") (emphasis added).

*Fifth*, the County tries to deny the textual evolution of EPCA's preemption provision. County.Br.44-45. The statutory text speaks for itself, and the current iteration of the EPCA preemption provision is broader than both the 1975 and 1978 versions. *See* Opening.Br.34. The County clings to a few lines in the House and Senate reports, County.Br.45, but clear statutory text controls over intentions expressed in legislative reports, *see FS Credit Opportunities Corp. v. Saba Capital Master Fund, Ltd.*, 146 S. Ct. 1546, 1558-59 (2026) ("statutory interpretation must focus on the text" instead of "that old-time devotion to legislative history"). Moreover, the quoted material from those reports does not indicate that the 1987 amendment left the preemption provision's scope unchanged, but merely that it "substantially" followed the previous provision's requirements and provided that preemption occurs on the "effective date" of the federal standard. County.Br.45. Neither is inconsistent with the current provision's plain text that is broader than, yet similar in many respects to, the previous iteration of EPCA's preemption provision.

*Sixth*, the County places great weight on the fact that some judges have disagreed with the Ninth Circuit's holding in *California Restaurant Association v. City of Berkeley*, 89 F.4th 1094 (9th Cir. 2024), and upheld other gas bans and similar measures against EPCA preemption challenges. County.Br.31-34; *see also Ass'n of Contracting Plumbers of the City of New York, Inc. v. City of New York*, No. 25-2041, 2026 WL 1871692 (2d Cir. June 30, 2026). Because none of those cases are binding

20

on this Court, they matter only for the persuasive force of their reasoning. On that score, none of those opinions has grappled with the critical point that a gas ban operates as a 0 kBtu/year energy conservation standard. As explained above in discussing the County's similar failing, that renders the rest of their analysis largely irrelevant. *See supra* § II.A. Debates about the meaning of "energy use" and whether EPCA preempts only "energy conservation standards" are ancillary where, as here, the law would be preempted even under the narrowest conceivable interpretation of EPCA preemption.

## III.    *Amici*'s arguments cannot save the County Gas Ban.

*Amici* Public Health Law Center ("PHLC"), Sierra Club, Chesapeake Climate Action Network ("CCAN"), and D.C. and various states argue against EPCA preemption in a few additional ways, but none move the needle.

A.    *Amicus* PHLC begins by arguing that EPCA's history does not support preemption of gas-appliance bans. *See* PHLC.Br.7-15. But much of the legislative record PHLC cites—generally showing that lawmakers sought to avoid balkanizing the national market for appliance manufacturers—undermines its argument. *See id.* As Plaintiffs have explained elsewhere, *see* Opening.Br.28-29, 32, gas bans like the County's, if allowed to proliferate, would complicate the appliance-manufacturing market and thereby thwart EPCA's goal of national uniformity.

PHLC nevertheless asserts that Congress's fear of "market fragmentation"

21

does not result from gas-appliance bans like the County's because "[t]here cannot be 50 conflicting prohibitions for the same appliance: an appliance is either prohibited or it is not." PHLC.Br.14. But when manufacturers are forced to "shift" and recalibrate production based on the whims of the jurisdictions in which they operate, it leads to precisely the kind of market fragmentation and interstate burden that Congress sought to eradicate with EPCA. *Cf.* 42 U.S.C. § 6297(d)(3) (DOE cannot grant a preemption waiver if, inter alia, the "State regulation will significantly burden manufacturing, marketing, distribution, sale, or servicing of the covered product on a national basis.").

B.    PHLC also claims that the County Gas Ban qualifies for EPCA's building code exception. *See* PHLC.Br.23-28. But the County never invokes the exception and in fact concedes it is "inapplicable." *See* County.Br.40. So the Court should not consider this issue. *See Snyder v. Phelps*, 580 F.3d 206, 216 (4th Cir. 2009) ("Put simply, our Court and our sister circuits have consistently been wary, even prohibitive, of addressing an issue raised solely by an amicus.").

In any event, the County Gas Ban does not qualify for the building code exception. It fails many of the seven requirements. Rather than setting an "energy consumption or conservation objective for a building" and allowing a builder to select items that, in combination, meet the objective, 42 U.S.C. § 6297(f)(3)(A), it instead imposes a blanket prohibition on the selection of *any* EPCA-covered gas

appliance. Whereas the exception demands that "[t]he code does not require that the covered product have an energy efficiency exceeding the" federal EPCA standards, *id.* § 6297(f)(3)(B), the County Gas Ban requires EPCA-covered gas appliances to have an impossibly high level of energy efficiency that is well beyond what the federal standards require. Instead of providing "credit to the energy consumption or conservation objective allowed by the code for installing covered products having energy efficiencies exceeding [the federal EPCA standards in section 6295] … on a one-for-one equivalent energy use or equivalent cost basis," *id.* § 6297(f)(3)(C), the County Gas Ban does not assign any credits for EPCA-covered gas appliances, but rather outright bans them. The County Gas Ban likewise fails § 6297(f)(3)(E) because it does not allow any combination in which builders can install EPCA-covered gas appliances that meet applicable EPCA energy use and efficiency standards. Finally, rather than specifying "[t]he energy consumption or conservation objective … in terms of an estimated total consumption of energy … utilizing an equivalent amount of energy," *id.* § 6297(f)(3)(F), the County Gas Ban bans gas appliances, period.

PHLC insists those failings are not a problem because while the County Gas Ban may not satisfy the seven requirements, the County's overall building code complies with at least two of them. PHLC.Br.25-28. But even for those two requirements, PHLC makes its argument only by ignoring the effect of the County

Gas Ban on the building code. That is the wrong mode of analysis. For example, without the County Gas Ban, the County's building code might provide "credit to the energy consumption or conservation objective for installing covered products having energy efficiencies exceeding" EPCA energy conservation standards on a "one-for-one equivalent energy use or equivalent cost basis." 42 U.S.C. § 6297(f)(3)(C). But with it, the building code gives no credit at all to gas appliances that exceed the federal standards and thus fails this requirement. It is much the same with the other requirements discussed above. In this way, the addition of the County Gas Ban alters the building code and renders it ineligible for the exception.

As for industrial appliances, Plaintiffs have explained how the County Gas Ban effectively requires an impossible level of energy efficiency and therefore does not qualify for the preemption exception. *See* Opening.Br.42-43 n.8. PHLC does not seem to understand that argument. *See* PHLC.Br.23-24. EPCA defines "energy efficiency" as "the ratio of the useful output of services from an article of industrial equipment to the energy use of such article," as determined by EPCA's test procedures. 42 U.S.C. § 6311(3). The County Gas Ban's prohibition on gas "energy use" means that gas appliances must achieve an impossibly high level of "energy efficiency" to comply, since they would have to produce a "useful output of services" from zero "energy use." That runs afoul of the exception because it specifies that the regulation must "not require that the energy efficiency of such product exceed the

24

applicable minimum energy efficiency requirement in amended ASHRAE/IES Standard 90.1." *Id.* § 6316(b)(2)(B)(i).

C.    *Amici* also worry that Plaintiffs' view of EPCA preemption would intrude upon general police powers, imperiling all sorts of health-and-safety regulations. *See, e.g.*, States.Br.22-25. That concern is misplaced. To be sure, delineating the outer bounds of EPCA's broad preemption provision will involve some edge cases. But this is not one of them. The County Gas Ban is not a zoning ordinance with incidental or peripheral effects on gas appliances or some targeted provision of a fire code. It is a building code—precisely the kind of local regulation that EPCA covers—that imposes a wholesale ban on covered gas appliances in many buildings throughout the County. Because that kind of law falls within the core of EPCA's preemption provision, the Court can and should wait for closer cases to make the tough calls regarding the limits of EPCA preemption. *Cf. Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 585 (2012) ("It is enough for today that wherever that line may be, this statute is surely beyond it."); *Lebron v. Rumsfeld*, 670 F.3d 540, 557 (4th Cir. 2012) ("[W]e have no occasion to inquire how RFRA applies outside a military setting. Those questions are not before us, and we have no need to address them.").

Similarly, *amici*'s arguments that the County can ban gas appliances under its health and safety regulatory authority are beside the point. *See, e.g.*,

25

Sierra.Club.Br.22. There is no Tenth Amendment or police-powers exception to federal preemption. Both this Court and the Supreme Court have recognized as much. *See, e.g.*, *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 374 (2008) ("Despite the importance of the public health objective, we cannot agree with Maine that the federal law creates an exception on that basis, exempting state laws that it would otherwise pre-empt."); *Holland v. Burlington Indus., Inc.*, 772 F.2d 1140, 1148 n.6 (4th Cir. 1985) (rejecting a state official's "argument for a Tenth Amendment exemption from ERISA's preemption … or an exception based on the state's police power"), *abrogated on other grounds by Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989). So while the County can exercise its valid police and regulatory powers, it cannot do so in a manner federal law preempts.

## IV.   Plaintiffs are entitled to declaratory and injunctive relief.

The County does not dispute Plaintiffs' entitlement to declaratory relief, but contends that Plaintiffs do not meet the elements for injunctive relief. *See* County.Br.48-51. The County focuses on irreparable harm and essentially repackages its justiciability arguments concerning Plaintiffs' harm. *See id.* at 49-50. As discussed above, however, Plaintiffs have demonstrated their irreparable harm. *See supra* § I.A; Opening.Br.54.

The County does not dispute that it has no legitimate interest in enforcing a preempted law, or that the public interest is served by enjoining such a law. *See*

26

Opening.Br.55. The County is correct that those points "presume[] [Plaintiffs] are correct on the merits of this case." County.Br.51. But that is irrelevant because the Court would reach this point only if Plaintiffs prevailed on the EPCA preemption question. If EPCA preempts the County Gas Ban, there can be no serious argument that enjoining its enforcement is not in the public interest or that the balance of equities weighs against it.

Respectfully submitted,

BAKER BOTTS L.L.P.

By: */s/ J. Mark Little*
J. Mark Little
910 Louisiana Street
Houston, TX 77002
(713) 229-1489
mark.little@bakerbotts.com

Scott Novak
700 K Street NW
Washington, D.C. 20001
(202) 304-5099
scott.novak@bakerbotts.com

Daniel B. Rankin
401 S. 1st Street, Ste. 1300
Austin, TX 78704
(737) 393-7297
daniel.rankin@bakerbotts.com

*Counsel for National Association of Home Builders of the United States, Restaurant Law Center, National Federation of Independent Business, Inc., Maryland Building Industry Association, Washington Gas Light Company, and National Propane Gas Association*

28

BREDHOFF & KAISER, P.L.L.C.

/s/ *Abigail V. Carter*
Abigail V. Carter
805 15th Street, NW, Ste. 1000
Washington, D.C. 20005
(202) 842-2600
acarter@bredhoff.com

*Counsel for Philadelphia-Baltimore-Washington Laborers' District Council*

MOONEY, GREEN, SAIDON, MURPHY & WELCH, P.C.

/s/ *Lauren McDermott*
Lauren McDermott
1920 L Street NW
Washington, D.C. 20036
(202) 783-0010
lmcdermott@mooneygreen.com

*Counsel for Teamsters Local 96*

29

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,457 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the typestyle requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word in 14-point Times New Roman font.

*/s/ J. Mark Little*
J. Mark Little

## CERTIFICATE OF SERVICE

I certify that on July 16, 2026, the foregoing was electronically filed through this Court's CM/ECF system, which will send a notice of filing to all registered users.

/s/ J. Mark Little
J. Mark Little

31