**No. 26-1449**

IN THE

# United States Court of Appeals for the Fourth Circuit

---

NATIONAL ASSOCIATION OF HOME BUILDERS OF THE UNITED STATES, *et al.*,

*Appellants*,

*v.*

MONTGOMERY COUNTY, MARYLAND,

*Appellee*.

---

On Appeal from the U.S. District Court for the
District of Maryland, No. 8:24-cv-03024-PX

---

## APPELLANTS' STATUTORY AND REGULATORY ADDENDUM

---

Scott Novak
BAKER BOTTS L.L.P.
700 K Street NW
Washington, D.C. 20001
(202) 304-5099
scott.novak@bakerbotts.com

J. Mark Little
BAKER BOTTS L.L.P.
910 Louisiana Street
Houston, TX 77002
(713) 229-1489
mark.little@bakerbotts.com

Daniel B. Rankin
BAKER BOTTS L.L.P.
401 S. 1st Street, Ste. 1300
Austin, TX 78704
(737) 393-7297
daniel.rankin@bakerbotts.com

*Counsel for National Association of Home Builders of the United States,
Restaurant Law Center, National Federation of Independent Business, Inc.,
Maryland Building Industry Association, Washington Gas Light Company, and
National Propane Gas Association*

*Additional counsel and parties listed on next page*

Abigail V. Carter
BREDHOFF & KAISER, P.L.L.C.
805 15th St. NW, Ste. 1000
Washington, D.C. 20005
(202) 842-2600
acarter@bredhoff.com

*Counsel for Philadelphia-Baltimore-Washington Laborers' District Council*

Lauren McDermott
MOONEY, GREEN, SAIDON, MURPHY & WELCH, P.C.
1920 L St. NW
Washington, D.C. 20036
(202) 783-0010
lmcdermott@mooneygreen.com

*Counsel for Teamsters Local 96*

## CERTIFICATE OF SERVICE

I certify that on July 16, 2026 the foregoing was electronically filed through this Court's CM/ECF system, which will send a notice of filing to all registered users.

/s/ J. Mark Little
J. Mark Little

**TABLE OF CONTENTS**

Montgomery County Code § 2A-15 (excerpts) ......................................................A1

Montgomery County Code § 8-14D ...................................................................A3

42 U.S.C. § 6291 (excerpts)..............................................................................A5

42 U.S.C. § 6292 ............................................................................................A7

42 U.S.C. § 6293 (excerpts)..............................................................................A9

42 U.S.C. § 6295 (excerpts)............................................................................A10

42 U.S.C. § 6297 ..........................................................................................A15

42 U.S.C. § 6311 (excerpts) ...........................................................................A26

42 U.S.C. § 6314 (excerpts) ...........................................................................A29

42 U.S.C. § 6316 (excerpts) ...........................................................................A30

**Sec. 2A-15. Procedure for adoption of regulations.**

…

(f)  *Procedures for approval.*

(1)  Each regulation must be adopted under one of the 3 methods in this subsection. To amend or repeal an adopted regulation, an issuer must use the procedure under which the regulation was adopted.

(2)  A law authorizing a regulation may specify that one of the 3 methods must be used.

(3)  If the law does not specify that one of the 3 methods must be used, method (2) must be used.

*Method (1)*

(A)  A regulation proposed under this method is not adopted until the County Council approves it.

(B)  The issuer must send a copy of the proposed regulation to the Council after the deadline for comments published in the Register.

(C)  The Council by resolution may approve or disapprove the proposed regulation.

(D)  If the Council approves the regulation, the regulation takes effect upon adoption of the resolution approving it or on a later date specified in the regulation.

*Method (2)*

(A) The issuer must send a copy of the proposed regulation to the County Council after the deadline for comments published in the Register.

(B) The Council by resolution may approve or disapprove the proposed regulation within 60 days after receiving it.

(C) If necessary to assure complete review, the Council by resolution may extend the deadline set under subparagraph (B).

(D) If the Council approves the regulation, the regulation takes effect upon adoption of the resolution approving it or on a later date specified in the regulation.

(E) If the Council does not approve or disapprove the proposed regulation within 60 days after receiving it, or by any later deadline set by resolution, the regulation is automatically approved.

(F) If a regulation is automatically approved under this method, the regulation takes effect the day after the deadline for approval or on a later date specified in the regulation.

*Method (3)*

(A) A regulation adopted under this method is not subject to County Council approval or disapproval.

(B) The issuer must send a copy of the adopted regulation to the Council after the deadline for comments published in the Register.

(C) The regulation takes effect when the Council receives it or on a later date specified in the regulation.

…

A2

## Sec. 8-14D. Comprehensive Building Decarbonization.

(a)  *Definitions.* In this section, the following words have the meanings indicated:

*All-electric building* means a public or private building that contains no combustion equipment, or plumbing for combustion equipment, installed within the building or building site.

*Combustion equipment* means any equipment or appliance used for space heating, service water heating, cooking, clothes drying and/or lighting that uses fuel gas or fuel oil.

*New construction* means the construction of any new stand-alone building, with no remnants of any prior structure or physical connection to existing structures or outbuildings on the property.

(b)  *Standards.* The County Executive must issue Method (1) regulations to establish all-electric building standards for all new construction as part of the building code.

(1)  The regulations must include a code modification process. A code modification must only be granted if the resulting building is carbon-neutral or net-zero.

(2)  The regulations may include additional exemptions not listed in section 8-14D(c) if all-electric building standards cannot be applied to the system or use due to practical difficulty or undue hardship.

(c)  *Exemptions.* All-electric building standards do not apply to:

(1)  the emergency backup systems of buildings that require an emergency system and hence backup power;

(2)  buildings primarily used by a utility regulated by the Maryland Public Service Commission for the generation of electric power or steam;

(3)  buildings used to treat sewage or food waste;

(4)  commercial kitchen equipment in an eating and drinking establishment that satisfies the requirements of Chapter 15:

(5)  gas-powered fireplaces and gas-fired outdoor grills;

A3

(6)   applications for building permits submitted to the Department prior to the effective date of the regulation;

(7)   district combined heat and powers facilities; and

(8)   buildings used for the following uses, as defined in Chapter 59:

>    (A)   Manufacturing and Production uses;
>
>    (B)   Crematory;
>
>    (C)   Life Sciences;
>
>    (D)   Hospital; and
>
>    (E)   Farming and Farm Alcohol Production.

(d)   *Reports.*

>    (1)   The County Executive must submit a report to the County Council regarding the system capacity needs and investments required for an all-electric building code standard no later than September 30, 2024, and not before December 1, 2023. This report must include a review of any studies issued by the Public Service Commission and should include information provided by the utility companies that service Montgomery County.
>
>    (2)   The Department of Permitting Services must arrange for an annual audit that assesses a representative sample of new construction that complies with this section. The audit must include the number of applications submitted for new construction, the number of waivers granted, current electric rates for consumers, and an analysis of any alternative energy sources used. A complete copy of the audit findings must be submitted to the County Council on June 1 each year, beginning June 1, 2028.

Sec. 3. All-Electric Transition. Section 8-14D(b) of this Act must not apply to building permit applications submitted before December 31, 2027, for: (1) housing development projects where 50 percent or more of the dwelling units are moderately priced dwelling units as defined by Chapter 25A, or a similar instrument with a federal, state, or local government for the creation or preservation of income-restricted or market-rate affordable housing; (2) public or private schools; or (3) residential buildings with four or more stories.

A4

**42 U.S.C. § 6291**

## § 6291. Definitions

For purposes of this part:

(1) The term "consumer product" means any article (other than an automobile, as defined in section 32901(a)(3) of title 49) of a type—

(A) which in operation consumes, or is designed to consume, energy or, with respect to showerheads, faucets, water closets, and urinals, water; and

(B) which, to any significant extent, is distributed in commerce for personal use or consumption by individuals;

without regard to whether such article of such type is in fact distributed in commerce for personal use or consumption by an individual, except that such term includes fluorescent lamp ballasts, general service fluorescent lamps, incandescent reflector lamps, showerheads, faucets, water closets, and urinals distributed in commerce for personal or commercial use or consumption.

(2) The term "covered product" means a consumer product of a type specified in section 6292 of this title.

(3) The term "energy" means electricity, or fossil fuels. The Secretary may, by rule, include other fuels within the meaning of the term "energy" if he determines that such inclusion is necessary or appropriate to carry out the purposes of this chapter.

(4) The term "energy use" means the quantity of energy directly consumed by a consumer product at point of use, determined in accordance with test procedures under section 6293 of this title.

(5) The term "energy efficiency" means the ratio of the useful output of services from a consumer product to the energy use of such product, determined in accordance with test procedures under section 6293 of this title.

(6) The term "energy conservation standard" means—

(A) a performance standard which prescribes a minimum level of energy efficiency or a maximum quantity of energy use, or, in the case of showerheads, faucets, water closets, and urinals, water use, for a covered product, determined in accordance with test procedures prescribed under section 6293 of this title; or

A5

(B) a design requirement for the products specified in paragraphs (6), (7), (8), (10), (15), (16), (17), and (20) of section 6292(a) of this title; and

includes any other requirements which the Secretary may prescribe under section 6295(r) of this title.

. . .

(8) The term "measure of energy consumption" means energy use, energy efficiency, estimated annual operating cost, or other measure of energy consumption.

(9) The term "class of covered products" means a group of covered products, the functions or intended uses of which are similar (as determined by the Secretary).

. . . .

## 42 U.S.C. § 6292

### § 6292. Coverage

### (a) In general

The following consumer products, excluding those consumer products designed solely for use in recreational vehicles and other mobile equipment, are covered products:

(1) Refrigerators, refrigerator-freezers, and freezers which can be operated by alternating current electricity, excluding—

(A) any type designed to be used without doors; and

(B) any type which does not include a compressor and condenser unit as an integral part of the cabinet assembly.

(2) Room air conditioners.

(3) Central air conditioners and central air conditioning heat pumps.

(4) Water heaters.

(5) Furnaces.

(6) Dishwashers.

(7) Clothes washers.

(8) Clothes dryers.

(9) Direct heating equipment.

(10) Kitchen ranges and ovens.

(11) Pool heaters.

(12) Television sets.

(13) Fluorescent lamp ballasts.

(14) General service fluorescent lamps, general service incandescent lamps, and incandescent reflector lamps.

A7

(15) Showerheads, except safety shower showerheads.

(16) Faucets.

(17) Water closets.

(18) Urinals.

(19) Metal halide lamp fixtures.

(20) Any other type of consumer product which the Secretary classifies as a covered product under subsection (b).

**(b) Special classification of consumer product**

(1) The Secretary may classify a type of consumer product as a covered product if he determines that—

(A) classifying products of such type as covered products is necessary or appropriate to carry out the purposes of this chapter, and

(B) average annual per-household energy use by products of such type is likely to exceed 100 kilowatt-hours (or its Btu equivalent) per year.

(2) For purposes of this subsection:

(A) The term "average annual per-household energy use with respect to a type of product" means the estimated aggregate annual energy use (in kilowatt-hours or the Btu equivalent) of consumer products of such type which are used by households in the United States, divided by the number of such households which use products of such type.

(B) The Btu equivalent of one kilowatt-hour is 3,412 British thermal units.

(C) The term "household" shall be defined under rules of the Secretary.

A8

## 42 U.S.C. § 6293

**§ 6293. Test procedures**

. . .

**(b) Amended and new procedures**

>    (1) Test procedures.—

>    . . .

>>        (B) The Secretary may, in accordance with the requirements of this subsection, prescribe test procedures for any consumer product classified as a covered product under section 6292(b) of this title.

>    . . .

>    (3) Any test procedures prescribed or amended under this section shall be reasonably designed to produce test results which measure energy efficiency, energy use, water use (in the case of showerheads, faucets, water closets and urinals), or estimated annual operating cost of a covered product during a representative average use cycle or period of use, as determined by the Secretary, and shall not be unduly burdensome to conduct.

>    . . . .

**42 U.S.C. § 6295**

**§ 6295. Energy conservation standards**

**(a) Purposes**

The purposes of this section are to—

> (1) provide Federal energy conservation standards applicable to covered products; and

> (2) authorize the Secretary to prescribe amended or new energy conservation standards for each type (or class) of covered product.

. . .

**(*l*) Standards for other covered products**

> (1) The Secretary may prescribe an energy conservation standard for any type (or class) of covered products of a type specified in subsections (o) and (p) are met and the Secretary determines that—

>> (A) the average per household energy use within the United States by products of such type (or class) exceeded 150 kilowatt hours (or its Btu equivalent) for any 12-month period ending before such determination;

>> (B) the aggregate household energy use within the United States by products of such type (or class) exceeded 4,200,000,000 kilowatt-hours (or its Btu equivalent) for any such 12-month period;

>> (C) substantial improvement in the energy efficiency of products of such type (or class) is technologically feasible; and

>> (D) the application of a labeling rule under section 6294 of this title to such type (or class) is not likely to be sufficient to induce manufacturers to produce, and consumers and other persons to purchase, covered products of such type (or class) which achieve the maximum energy efficiency which is technologically feasible and economically justified.

. . .

**(*o*) Criteria for prescribing new or amended standards**

A10

(1) The Secretary may not prescribe any amended standard which increases the maximum allowable energy use, or, in the case of showerheads, faucets, water closets, or urinals, water use, or decreases the minimum required energy efficiency, of a covered product.

(2)

(A) Any new or amended energy conservation standard prescribed by the Secretary under this section for any type (or class) of covered product shall be designed to achieve the maximum improvement in energy efficiency, or, in the case of showerheads, faucets, water closets, or urinals, water efficiency, which the Secretary determines is technologically feasible and economically justified.

(B)

(i) In determining whether a standard is economically justified, the Secretary shall, after receiving views and comments furnished with respect to the proposed standard, determine whether the benefits of the standard exceed its burdens by, to the greatest extent practicable, considering—

(I) the economic impact of the standard on the manufacturers and on the consumers of the products subject to such standard;

(II) the savings in operating costs throughout the estimated average life of the covered product in the type (or class) compared to any increase in the price of, or in the initial charges for, or maintenance expenses of, the covered products which are likely to result from the imposition of the standard;

(III) the total projected amount of energy, or as applicable, water, savings likely to result directly from the imposition of the standard;

(IV) any lessening of the utility or the performance of the covered products likely to result from the imposition of the standard;

A11

(V) the impact of any lessening of competition, as determined in writing by the Attorney General, that is likely to result from the imposition of the standard;

(VI) the need for national energy and water conservation; and

(VII) other factors the Secretary considers relevant.

(ii) For purposes of clause (i)(V), the Attorney General shall make a determination of the impact, if any, of any lessening of competition likely to result from such standard and shall transmit such determination, not later than 60 days after the publication of a proposed rule prescribing or amending an energy conservation standard, in writing to the Secretary, together with an analysis of the nature and extent of such impact. Any such determination and analysis shall be published by the Secretary in the Federal Register.

(iii) If the Secretary finds that the additional cost to the consumer of purchasing a product complying with an energy conservation standard level will be less than three times the value of the energy, and as applicable, water, savings during the first year that the consumer will receive as a result of the standard, as calculated under the applicable test procedure, there shall be a rebuttable presumption that such standard level is economically justified. A determination by the Secretary that such criterion is not met shall not be taken into consideration in the Secretary's determination of whether a standard is economically justified.

(3) The Secretary may not prescribe an amended or new standard under this section for a type (or class) of covered product if—

(A) for products other than dishwashers, clothes washers, clothes dryers, and kitchen ranges and ovens, a test procedure has not been prescribed pursuant to section 6293 of this title with respect to that type (or class) of product; or

(B) the Secretary determines, by rule, that the establishment of such standard will not result in significant conservation of energy or, in the case of showerheads, faucets, water closets, or urinals, water, or that

A12

the establishment of such standard is not technologically feasible or economically justified.

> For purposes of section 6297 of this title, a determination under subparagraph (B) with respect to any type (or class) of covered products shall have the same effect as would a standard prescribed for such type (or class).

(4) The Secretary may not prescribe an amended or new standard under this section if the Secretary finds (and publishes such finding) that interested persons have established by a preponderance of the evidence that the standard is likely to result in the unavailability in the United States in any covered product type (or class) of performance characteristics (including reliability), features, sizes, capacities, and volumes that are substantially the same as those generally available in the United States at the time of the Secretary's finding. The failure of some types (or classes) to meet this criterion shall not affect the Secretary's determination of whether to prescribe a standard for other types (or classes).

. . .

## (q) Special rule for certain types or classes of products

(1) A rule prescribing an energy conservation standard for a type (or class) of covered products shall specify a level of energy use or efficiency higher or lower than that which applies (or would apply) for such type (or class) for any group of covered products which have the same function or intended use, if the Secretary determines that covered products within such group—

(A) consume a different kind of energy from that consumed by other covered products within such type (or class); or

(B) have a capacity or other performance-related feature which other products within such type (or class) do not have and such feature justifies a higher or lower standard from that which applies (or will apply) to other products within such type (or class).

> In making a determination under this paragraph concerning whether a performance-related feature justifies the establishment of a higher or lower standard, the Secretary shall consider such factors as the utility to the consumer of such a feature, and such other factors as the Secretary deems appropriate.

A13

(2) Any rule prescribing a higher or lower level of energy use or efficiency under paragraph (1) shall include an explanation of the basis on which such higher or lower level was established.

. . . .

## 42 U.S.C. § 6297

### § 6297. Effect on other law

### (a) Preemption of testing and labeling requirements

(1) Effective on March 17, 1987, this part supersedes any State regulation insofar as such State regulation provides at any time for the disclosure of information with respect to any measure of energy consumption or water use of any covered product if—

(A) such State regulation requires testing or the use of any measure of energy consumption, water use, or energy descriptor in any manner other than that provided under section 6293 of this title; or

(B) such State regulation requires disclosure of information with respect to the energy use, energy efficiency, or water use of any covered product other than information required under section 6294 of this title.

(2) For purposes of this section, the following definitions apply:

(A) The term "State regulation" means a law, regulation, or other requirement of a State or its political subdivisions. With respect to showerheads, faucets, water closets, and urinals, such term shall also mean a law, regulation, or other requirement of a river basin commission that has jurisdiction within a State.

(B) The term "river basin commission" means—

(i) a commission established by interstate compact to apportion, store, regulate, or otherwise manage or coordinate the management of the waters of a river basin; and

(ii) a commission established under section 1962b(a) of this title.

### (b) General rule of preemption for energy conservation standards before Federal standard becomes effective for product

Effective on March 17, 1987, and ending on the effective date of an energy conservation standard established under section 6295 of this title for any covered product, no State regulation, or revision thereof, concerning the energy efficiency, energy use, or water use of the covered product shall be effective with respect to such covered product, unless the State regulation or revision—

A15

(1)

(A) was prescribed or enacted before January 8, 1987, and is applicable to products before January 3, 1988, or in the case of any portion of any regulation which establishes requirements for fluorescent lamp ballasts, was prescribed or enacted before June 28, 1988, or in the case of any portion of any regulation which establishes requirements for fluorescent or incandescent lamps, flow rate requirements for showerheads or faucets, or water use requirements for water closets or urinals, was prescribed or enacted before October 24, 1992; or

(B) in the case of any portion of any regulation that establishes requirements for general service incandescent lamps, intermediate base incandescent lamps, or candelabra base lamps, was enacted or adopted by the State of California or Nevada before December 4, 2007, except that—

(i) the regulation adopted by the California Energy Commission with an effective date of January 1, 2008, shall only be effective until the effective date of the Federal standard for the applicable lamp category under subparagraphs (A), (B), and (C) of section 6295(i)(1) of this title; and

(ii) the States of California and Nevada may, at any time, modify or adopt a State standard for general service lamps to conform with Federal standards with effective dates no earlier than 12 months prior to the Federal effective dates prescribed under subparagraphs (A), (B), and (C) of section 6295(i)(1) of this title, at which time any prior regulations adopted by the State of California or Nevada shall no longer be effective.

(2) is a State procurement regulation described in subsection (e);

(3) is a regulation described in subsection (f)(1) or is prescribed or enacted in a building code for new construction described in subsection (f)(2);

(4) is a regulation prohibiting the use in pool heaters of a constant burning pilot, or is a regulation (or portion thereof) regulating fluorescent lamp ballasts other than those to which paragraph (5) of section 6295(g) of this title is applicable, or is a regulation (or portion thereof) regulating fluorescent or incandescent lamps other than those to which section 6295(i) of this title is applicable, or is a regulation (or portion thereof) regulating showerheads or

A16

faucets other than those to which section 6295(j) of this title is applicable or regulating lavatory faucets (other than metering faucets) for installation in public places, or is a regulation (or portion thereof) regulating water closets or urinals other than those to which section 6295(k) of this title is applicable;

(5) is a regulation described in subsection (d)(5)(B) for which a waiver has been granted under subsection (d);

(6) is a regulation effective on or after January 1, 1992, concerning the energy efficiency or energy use of television sets; or

(7) is a regulation (or portion thereof) concerning the water efficiency or water use of low consumption flushometer valve water closets.

**(c) General rule of preemption for energy conservation standards when Federal standard becomes effective for product**

Except as provided in section 6295(b)(3)(A)(ii) of this title, subparagraphs (B) and (C) of section 6295(j)(3) of this title, and subparagraphs (B) and (C) of section 6295(k)(3) of this title and effective on the effective date of an energy conservation standard established in or prescribed under section 6295 of this title for any covered product, no State regulation concerning the energy efficiency, energy use, or water use of such covered product shall be effective with respect to such product unless the regulation—

(1) is a regulation described in paragraph (2) or (4) of subsection (b), except that a State regulation (or portion thereof) regulating fluorescent lamp ballasts other than those to which paragraph (5) of section 6295(g) of this title is applicable shall be effective only until the effective date of a standard that is prescribed by the Secretary under paragraph (7) of such section and is applicable to such ballasts, except that a State regulation (or portion thereof) regulating fluorescent or incandescent lamps other than those for which section 6295(i) of this title is applicable shall be effective only until the effective date of a standard that is prescribed by the Secretary and is applicable to such lamps;

(2) is a regulation which has been granted a waiver under subsection (d);

(3) is in a building code for new construction described in subsection (f)(3);

(4) is a regulation concerning the water use of lavatory faucets adopted by the State of New York or the State of Georgia before October 24, 1992;

A17

(5) is a regulation concerning the water use of lavatory or kitchen faucets adopted by the State of Rhode Island prior to October 24, 1992;

(6) is a regulation (or portion thereof) concerning the water efficiency or water use of gravity tank-type low consumption water closets for installation in public places, except that such a regulation shall be effective only until January 1, 1997; or

(7)

    (A) is a regulation concerning standards for commercial prerinse spray valves adopted by the California Energy Commission before January 1, 2005; or

    (B) is an amendment to a regulation described in subparagraph (A) that was developed to align California regulations with changes in American Society for Testing and Materials Standard F2324; adopted by the California Energy Commission before January 1, 2005; or

(8)

    (A) is a regulation concerning standards for pedestrian adopted by the California Energy Commission before January 1, 2005; or

    (B) is an amendment to a regulation described in subparagraph (A) that was developed to align California regulations to changes in the Institute for Transportation Engineers standards, entitled "Performance Specification: Pedestrian Traffic Control Signal Indications"; and

(9) is a regulation concerning metal halide lamp fixtures adopted by the California Energy Commission on or before January 1, 2011, except that—

    (A) if the Secretary fails to issue a final rule within 180 days after the deadlines for rulemakings in section 6295(hh) of this title, notwithstanding any other provision of this section, preemption shall not apply to a regulation concerning metal halide lamp fixtures adopted by the California Energy Commission—

        (i) on or before July 1, 2015, if the Secretary fails to meet the deadline specified in section 6295(hh)(2) of this title; or

        (ii) on or before July 1, 2022, if the Secretary fails to meet the deadline specified in section 6295(hh)(3) of this title.

A18

**(d) Waiver of Federal preemption**

(1)

(A) Any State or river basin commission with a State regulation which provides for any energy conservation standard or other requirement with respect to energy use, energy efficiency, or water use for any type (or class) of covered product for which there is a Federal energy conservation standard under section 6295 of this title may file a petition with the Secretary requesting a rule that such State regulation become effective with respect to such covered product.

(B) Subject to paragraphs (2) through (5), the Secretary shall, within the period described in paragraph (2) and after consideration of the petition and the comments of interested persons, prescribe such rule if the Secretary finds (and publishes such finding) that the State or river basin commission has established by a preponderance of the evidence that such State regulation is needed to meet unusual and compelling State or local energy or water interests.

(C) For purposes of this subsection, the term "unusual and compelling State or local energy or water interests" means interests which—

(i) are substantially different in nature or magnitude than those prevailing in the United States generally; and

(ii) are such that the costs, benefits, burdens, and reliability of energy or water savings resulting from the State regulation make such regulation preferable or necessary when measured against the costs, benefits, burdens, and reliability of alternative approaches to energy or water savings or production, including reliance on reasonably predictable market-induced improvements in efficiency of all products subject to the State regulation.

The factors described in clause (ii) shall be evaluated within the context of the State's energy plan and forecast, and, with respect to a State regulation for which a petition has been submitted to the Secretary which provides for any energy conservation standard or requirement with respect to water use of a covered product, within the context of the water supply and groundwater management plan, water quality program, and comprehensive plan (if any) of the State or river basin

A19

commission for improving, developing, or conserving a waterway affected by water supply development.

(2) The Secretary shall give notice of any petition filed under paragraph (1)(A) and afford interested persons a reasonable opportunity to make written comments, including rebuttal comments, thereon. The Secretary shall, within the 6-month period beginning on the date on which any such petition is filed, deny such petition or prescribe the requested rule, except that the Secretary may publish a notice in the Federal Register extending such period to a date certain but no longer than one year after the date on which the petition was filed. Such notice shall include the reasons for delay. In the case of any denial of a petition under this subsection, the Secretary shall publish in the Federal Register notice of, and the reasons for, such denial.

(3) The Secretary may not prescribe a rule under this subsection if the Secretary finds (and publishes such finding) that interested persons have established, by a preponderance of the evidence, that such State regulation will significantly burden manufacturing, marketing, distribution, sale, or servicing of the covered product on a national basis. In determining whether to make such finding, the Secretary shall evaluate all relevant factors, including—

> (A) the extent to which the State regulation will increase manufacturing or distribution costs of manufacturers, distributors, and others;

> (B) the extent to which the State regulation will disadvantage smaller manufacturers, distributors, or dealers or lessen competition in the sale of the covered product in the State;

> (C) the extent to which the State regulation would cause a burden to manufacturers to redesign and produce the covered product type (or class), taking into consideration the extent to which the regulation would result in a reduction-

>> (i) in the current models, or in the projected availability of models, that could be shipped on the effective date of the regulation to the State and within the United States; or

>> (ii) in the current or projected sales volume of the covered product type (or class) in the State and the United States; and

A20

(D) the extent to which the State regulation is likely to contribute significantly to a proliferation of State appliance efficiency requirements and the cumulative impact such requirements would have.

(4) The Secretary may not prescribe a rule under this subsection if the Secretary finds (and publishes such finding) that interested persons have established, by a preponderance of the evidence, that the State regulation is likely to result in the unavailability in the State of any covered product type (or class) of performance characteristics (including reliability), features, sizes, capacities, and volumes that are substantially the same as those generally available in the State at the time of the Secretary's finding, except that the failure of some classes (or types) to meet this criterion shall not affect the Secretary's determination of whether to prescribe a rule for other classes (or types).

(5) No final rule prescribed by the Secretary under this subsection may—

(A) permit any State regulation to become effective with respect to any covered product manufactured within three years after such rule is published in the Federal Register or within five years if the Secretary finds that such additional time is necessary due to the substantial burdens of retooling, redesign, or distribution needed to comply with the State regulation; or

(B) become effective with respect to a covered product manufactured before the earliest possible effective date specified in section 6295 of this title for the initial amendment of the energy conservation standard established in such section for the covered product; except that such rule may become effective before such date if the Secretary finds (and publishes such finding) that, in addition to the other requirements of this subsection the State has established, by a preponderance of the evidence, that—

(i) there exists within the State an energy emergency condition or, if the State regulation provides for an energy conservation standard or other requirement with respect to the water use of a covered product for which there is a Federal energy conservation standard under subsection (j) or (k) of section 6295 of this title, a water emergency condition, which—

A21

(I) imperils the health, safety, and welfare of its residents because of the inability of the State or utilities within the State to provide adequate quantities of gas or electric energy or, in the case of a water emergency condition, water or wastewater treatment, to its residents at less than prohibitive costs; and

(II) cannot be substantially alleviated by the importation of energy or, in the case of a water emergency condition, by the importation of water, or by the use of interconnection agreements; and

(ii) the State regulation is necessary to alleviate substantially such condition.

(6) In any case in which a State is issued a rule under paragraph (1) with respect to a covered product and subsequently a Federal energy conservation standard concerning such product is amended pursuant to section 6295 of this title, any person subject to such State regulation may file a petition with the Secretary requesting the Secretary to withdraw the rule issued under paragraph (1) with respect to such product in such State. The Secretary shall consider such petition in accordance with the requirements of paragraphs (1), (3), and (4), except that the burden shall be on the petitioner to show by a preponderance of the evidence that the rule received by the State under paragraph (1) should be withdrawn as a result of the amendment to the Federal standard. If the Secretary determines that the petitioner has shown that the rule issued by the State should be so withdrawn, the Secretary shall withdraw it.

## (e) Exception for certain State procurement standards

Any State regulation which sets forth procurement standards for a State (or political subdivision thereof) shall not be superseded by the provisions of this part if such standards are more stringent than the corresponding Federal energy conservation standards.

## (f) Exception for certain building code requirements

(1) A regulation or other requirement enacted or prescribed before January 8, 1987, that is contained in a State or local building code for new construction concerning the energy efficiency or energy use of a covered product is not superseded by this part until the effective date of the energy conservation

A22

standard established in or prescribed under section 6295 of this title for such covered product.

(2) A regulation or other requirement, or revision thereof, enacted or prescribed on or after January 8, 1987, that is contained in a State or local building code for new construction concerning the energy efficiency or energy use of a covered product is not superseded by this part until the effective date of the energy conservation standard established in or prescribed under section 6295 of this title for such covered product if the code does not require that the energy efficiency of such covered product exceed—

(A) the applicable minimum efficiency requirement in a national voluntary consensus standard; or

(B) the minimum energy efficiency level in a regulation or other requirement of the State meeting the requirements of subsection (b)(1) or (b)(5), whichever is higher.

(3) Effective on the effective date of an energy conservation standard for a covered product established in or prescribed under section 6295 of this title, a regulation or other requirement contained in a State or local building code for new construction concerning the energy efficiency or energy use of such covered product is not superseded by this part if the code complies with all of the following requirements:

(A) The code permits a builder to meet an energy consumption or conservation objective for a building by selecting items whose combined energy efficiencies meet the objective.

(B) The code does not require that the covered product have an energy efficiency exceeding the applicable energy conservation standard established in or prescribed under section 6295 of this title, except that the required efficiency may exceed such standard up to the level required by a regulation of that State for which the Secretary has issued a rule granting a waiver under subsection (d).

(C) The credit to the energy consumption or conservation objective allowed by the code for installing covered products having energy efficiencies exceeding such energy conservation standard established in or prescribed under section 6295 of this title or the efficiency level required in a State regulation referred to in subparagraph (B) is on a one-for-one equivalent energy use or equivalent cost basis.

A23

(D) If the code uses one or more baseline building designs against which all submitted building designs are to be evaluated and such baseline building designs contain a covered product subject to an energy conservation standard established in or prescribed under section 6295 of this title, the baseline building designs are based on the efficiency level for such covered product which meets but does not exceed such standard or the efficiency level required by a regulation of that State for which the Secretary has issued a rule granting a waiver under subsection (d).

(E) If the code sets forth one or more optional combinations of items which meet the energy consumption or conservation objective, for every combination which includes a covered product the efficiency of which exceeds either standard or level referred to in subparagraph (D), there also shall be at least one combination which includes such covered product the efficiency of which does not exceed such standard or level by more than 5 percent, except that at least one combination shall include such covered product the efficiency of which meets but does not exceed such standard.

(F) The energy consumption or conservation objective is specified in terms of an estimated total consumption of energy (which may be calculated from energy loss- or gain-based codes) utilizing an equivalent amount of energy (which may be specified in units of energy or its equivalent cost).

(G) The estimated energy use of any covered product permitted or required in the code, or used in calculating the objective, is determined using the applicable test procedures prescribed under section 6293 of this title, except that the State may permit the estimated energy use calculation to be adjusted to reflect the conditions of the areas where the code is being applied if such adjustment is based on the use of the applicable test procedures prescribed under section 6293 of this title or other technically accurate documented procedure.

(4)

(A) Subject to subparagraph (B), a State or local government is not required to submit a petition to the Secretary in order to enforce or apply its building code or to establish that the code meets the conditions set forth in this subsection.

A24

(B) If a building code requires the installation of covered products with efficiencies exceeding both the applicable Federal standard established in or prescribed under section 6295 of this title and the applicable standard of such State, if any, that has been granted a waiver under subsection (d), such requirement of the building code shall not be applicable unless the Secretary has granted a waiver for such requirement under subsection (d).

**(g) No warranty**

Any disclosure with respect to energy use, energy efficiency, or estimated annual operating cost which is required to be made under the provisions of this part shall not create an express or implied warranty under State or Federal law that such energy efficiency will be achieved or that such energy use or estimated annual operating cost will not be exceeded under conditions of actual use.

A25

## 42 U.S.C. § 6311

### § 6311. Definitions

For purposes of this part—

(1) The term "covered equipment" means one of the following types of industrial equipment:

(A) Electric motors and pumps.

(B) Small commercial package air conditioning and heating equipment.

(C) Large commercial package air conditioning and heating equipment.

(D) Very large commercial package air conditioning and heating equipment.

(E) Commercial refrigerators, freezers, and refrigerator-freezers.

(F) Automatic commercial ice makers.

(G) Walk-in coolers and walk-in freezers.

(H) Commercial clothes washers.

(I) Packaged terminal air-conditioners and packaged terminal heat pumps.

(J) Warm air furnaces and packaged boilers.

(K) Storage water heaters, instantaneous water heaters, and unfired hot water storage tanks.

(L) Any other type of industrial equipment which the Secretary classifies as covered equipment under section 6312(b) of this title.

(2)

(A) The term "industrial equipment" means any article of equipment referred to in subparagraph (B) of a type—

(i) which in operation consumes, or is designed to consume, energy;

A26

(ii) which, to any significant extent, is distributed in commerce for industrial or commercial use; and

(iii) which is not a "covered product" as defined in section 6291(a)(2) of this title, other than a component of a covered product with respect to which there is in effect a determination under section 6312(c) of this title;

without regard to whether such article is in fact distributed in commerce for industrial or commercial use.

(B) The types of equipment referred to in this subparagraph (in addition to electric motors and pumps, commercial package air conditioning and heating equipment, commercial refrigerators, freezers, and refrigerator-freezers, automatic commercial ice makers, commercial clothes washers, packaged terminal air conditioners, packaged terminal heat pumps, warm air furnaces, packaged boilers, storage water heaters, instantaneous water heaters, and unfired hot water storage tanks) are as follows:

(i) compressors;

(ii) fans;

(iii) blowers;

(iv) refrigeration equipment;

(v) electric lights and lighting power supply circuits;

(vi) electrolytic equipment;

(vii) electric arc equipment;

(viii) steam boilers;

(ix) ovens;

(x) kilns;

(xi) evaporators;

(xii) dryers; and

A27

(xiii) other motors.

(3) The term "energy efficiency" means the ratio of the useful output of services from an article of industrial equipment to the energy use by such article, determined in accordance with test procedures under section 6314 of this title.

(4) The term "energy use" means the quantity of energy directly consumed by an article of industrial equipment at the point of use, determined in accordance with test procedures established under section 6314 of this title.

…

(7) The terms "energy", "manufacture", "import", "importation", "consumer product", "distribute in commerce", "distribution in commerce", and "commerce" have the same meaning as is given such terms in section 6291 of this title.

…

(18) The term "energy conservation standard" means—

> (A) a performance standard that prescribes a minimum level of energy efficiency or a maximum quantity of energy use for a product; or

> (B) a design requirement for a product.

…

A28

## 42 U.S.C. § 6314

**§ 6314. Test Procedures**

**(a) Prescription by Secretary; requirements**

(1) Test procedures.—

…

(2) Test procedures prescribed in accordance with this section shall be reasonably designed to produce test results which reflect energy efficiency, energy use, and estimated operating costs of a type of industrial equipment (or class thereof) during a representative average use cycle (as determined by the Secretary) and shall not be unduly burdensome to conduct.

….

A29

**42 U.S.C. § 6316**

**§ 6316. Administration, penalties, enforcement, and preemption**

(a) The provisions of section 6296(a), (b), and (d) of this title, the provisions of subsections (l) through (s) of section 6295 of this title, and section 1 6297 through 6306 of this title shall apply with respect to this part (other than the equipment specified in subparagraphs (B), (C), (D), (I), (J), and (K) of section 6311(1) of this title) to the same extent and in the same manner as they apply in part A. In applying such provisions for the purposes of this part

(1) references to sections 6293, 6294, and 6295 of this title shall be considered as references to sections 6314, 6315, and 6313 of this title, respectively;

(2) references to "this part" shall be treated as referring to part A-1;

(3) the term "equipment" shall be substituted for the term "product";

(4) the term "Secretary" shall be substituted for "Commission" each place it appears (other than in section 6303(c) of title);

(5) section 6297(a) of this title shall be applied, in the case of electric motors, as if the National Appliance Energy Conservation Act of 1987 was the Energy Policy Act of 1992;

(6) section 6297(b)(1) of this title shall be applied as if electric motors were fluorescent lamp ballasts and as if the National Appliance Energy Conservation Amendments of 1988 were the Energy Policy Act of 1992;

(7) section 6297(b)(4) of this title shall be applied as if electric motors were fluorescent lamp ballasts and as if paragraph (5) of section 6295(g) of this title were section 6313 of this title;

(8) notwithstanding any other provision of law, a regulation or other requirement adopted by a State or subdivision of a State contained in a State or local building code for new construction concerning the energy efficiency or energy use of an electric motor covered under this part is not superseded by the standards for such electric motor established or prescribed under section 6313(b) of this title if such regulation or requirement is identical to the standards established or prescribed under such section;

A30

(9) in the case of commercial clothes washers, section 6297(b)(1) of this title shall be applied as if the National Appliance Energy Conservation Act of 1987 was the Energy Policy Act of 2005; and

(10) section 6297 of this title shall apply with respect to the equipment described in section 6311(1)(L) of this title beginning on the date on which a final rule establishing an energy conservation standard is issued by the Secretary, except that any State or local standard prescribed or enacted for the equipment before the date on which the final rule is issued shall not be preempted until the energy conservation standard established by the Secretary for the equipment takes effect.

(b)

(1) The provisions of section 6295(p)(4) of this title, section 6296(a), (b), and (d) of this title, section 6297(a) of this title, and sections 6298 through 6306 of this title shall apply with respect to the equipment specified in subparagraphs (B), (C), (D), (I), (J), and (K) of section 6311(1) of this title to the same extent and in the same manner as they apply in part A. In applying such provisions for the purposes of such equipment, paragraphs (1), (2), (3), and (4) of subsection (a) shall apply.

(2)

(A) A standard prescribed or established under section 6313(a) of this title shall, beginning on the effective date of such standard, supersede any State or local regulation concerning the energy efficiency or energy use of a product for which a standard is prescribed or established pursuant to such section.

(B) Notwithstanding subparagraph (A), a standard prescribed or established under section 6313(a) of this title shall not supersede a standard for such a product contained in a State or local building code for new construction if—

(i) the standard in the building code does not require that the energy efficiency of such product exceed the applicable minimum energy efficiency requirement in amended ASHRAE/IES Standard 90.1; and

A31

(ii) the standard in the building code does not take effect prior to the effective date of the applicable minimum energy efficiency requirement in amended ASHRAE/IES Standard 90.1.

(C) Notwithstanding subparagraph (A), a standard prescribed or established under section 6313(a) of this title shall not supersede the standards established by the State of California set forth in Table C-6, California Code of Regulations, Title 24, Part 2, Chapter 2-53, for water-source heat pumps below 135,000 Btu per hour (cooling capacity) that become effective on January 1, 1993.

(D) Notwithstanding subparagraph (A), a standard prescribed or established under section 6313(a) of this title shall not supersede a State regulation which has been granted a waiver by the Secretary. The Secretary may grant a waiver pursuant to the terms, conditions, criteria, procedures, and other requirements specified in section 6297(d) of this title.

(c) With respect to any electric motor to which standards are applicable under section 6313(b) of this title, the Secretary shall require manufacturers to certify, through an independent testing or certification program nationally recognized in the United States, that such motor meets the applicable standard.

(d)

(1) Except as provided in paragraphs (2) and (3), section 6297 of this title shall apply with respect to very large commercial package air conditioning and heating equipment to the same extent and in the same manner as section 6297 of this title applies under part A on August 8, 2005.

(2) Any State or local standard issued before August 8, 2005, shall not be preempted until the standards established under section 6313(a)(9) of this title take effect on January 1, 2010.

(e)

(1)

(A) Subsections (a), (b), and (d) of section 6296 of this title, subsections (m) through (s) of section 6295 of this title, and sections 6298 through 6306 of this title shall apply with respect to commercial refrigerators,

A32

freezers, and refrigerator-freezers to the same extent and in the same manner as those provisions apply under part A.

(B) In applying those provisions to commercial refrigerators, freezers, and refrigerator-freezers, paragraphs (1), (2), (3), and (4) of subsection (a) shall apply.

(2)

(A) Section 6297 of this title shall apply to commercial refrigerators, freezers, and refrigerator-freezers for which standards are established under paragraphs (2) and (3) of section 6313(c) of this title to the same extent and in the same manner as those provisions apply under part A on August 8, 2005, except that any State or local standard issued before August 8, 2005, shall not be preempted until the standards established under paragraphs (2) and (3) of section 6313(c) of this title take effect.

(B) In applying section 6297 of this title in accordance with subparagraph (A), paragraphs (1), (2), and (3) of subsection (a) shall apply.

(3)

(A) Section 6297 of this title shall apply to commercial refrigerators, freezers, and refrigerator-freezers for which standards are established under section 6313(c)(4) of this title to the same extent and in the same manner as the provisions apply under part A on the date of publication of the final rule by the Secretary, except that any State or local standard issued before the date of publication of the final rule by the Secretary shall not be preempted until the standards take effect.

(B) In applying section 6297 of this title in accordance with subparagraph (A), paragraphs (1), (2), and (3) of subsection (a) shall apply.

(4)

(A) If the Secretary does not issue a final rule for a specific type of commercial refrigerator, freezer, or refrigerator-freezer within the time frame specified in section 6313(c)(5) of this title, subsections (b) and (c) of section 6297 of this title shall not apply to that specific type

A33

of refrigerator, freezer, or refrigerator-freezer for the period beginning on the date that is 2 years after the scheduled date for a final rule and ending on the date on which the Secretary publishes a final rule covering the specific type of refrigerator, freezer, or refrigerator-freezer.

(B) Any State or local standard issued before the date of publication of the final rule shall not be preempted until the final rule takes effect.

(5)

(A) In the case of any commercial refrigerator, freezer, or refrigerator-freezer to which standards are applicable under paragraphs (2) and (3) of section 6313(c) of this title, the Secretary shall require manufacturers to certify, through an independent, nationally recognized testing or certification program, that the commercial refrigerator, freezer, or refrigerator-freezer meets the applicable standard.

(B) The Secretary shall, to the maximum extent practicable, encourage the establishment of at least 2 independent testing and certification programs.

(C) As part of certification, information on equipment energy use and interior volume shall be made available to the Secretary.

(f)

(1)

(A)

(i) Except as provided in clause (ii), section 6297 of this title shall apply to automatic commercial ice makers for which standards have been established under section 6313(d)(1) of this title to the same extent and in the same manner as the section applies under part A on August 8, 2005.

(ii) Any State standard issued before August 8, 2005, shall not be preempted until the standards established under section 6313(d)(1) of this title take effect.

A34

(B) In applying section 6297 of this title to the equipment under subparagraph (A), paragraphs (1), (2), and (3) of subsection (a) shall apply.

(2)

(A)

(i) Except as provided in clause (ii), section 6297 of this title shall apply to automatic commercial ice makers for which standards have been established under section 6313(d)(2) of this title to the same extent and in the same manner as the section applies under part A on the date of publication of the final rule by the Secretary.

(ii) Any State standard issued before the date of publication of the final rule by the Secretary shall not be preempted until the standards established under section 6313(d)(2) of this title take effect.

(B) In applying section 6297 of this title in accordance with subparagraph (A), paragraphs (1), (2), and (3) of subsection (a) shall apply.

(3)

(A) If the Secretary does not issue a final rule for a specific type of automatic commercial ice maker within the time frame specified in section 6313(d) of this title, subsections (b) and (c) of section 6297 of this title shall no longer apply to the specific type of automatic commercial ice maker for the period beginning on the day after the scheduled date for a final rule and ending on the date on which the Secretary publishes a final rule covering the specific type of automatic commercial ice maker.

(B) Any State standard issued before the publication of the final rule shall not be preempted until the standards established in the final rule take effect.

(4)

(A) The Secretary shall monitor whether manufacturers are reducing harvest rates below tested values for the purpose of bringing non-complying equipment into compliance.

(B) If the Secretary finds that there has been a substantial amount of manipulation with respect to harvest rates under subparagraph (A), the Secretary shall take steps to minimize the manipulation, such as requiring harvest rates to be within 5 percent of tested values.

(g)

(1)

(A) If the Secretary does not issue a final rule for commercial clothes washers within the timeframe specified in section 6313(e)(2) of this title, subsections (b) and (c) of section 6297 of this title shall not apply to commercial clothes washers for the period beginning on the day after the scheduled date for a final rule and ending on the date on which the Secretary publishes a final rule covering commercial clothes washers.

(B) Any State or local standard issued before the date on which the Secretary publishes a final rule shall not be preempted until the standards established under section 6313(e)(2) of this title take effect.

(2) The Secretary shall undertake an educational program to inform owners of laundromats, multifamily housing, and other sites where commercial clothes washers are located about the new standard, including impacts on washer purchase costs and options for recovering those costs through coin collection.

….

A36